NASH *vs.* CHURCH et al.

APPEAL FROM ' CIRCUIT COURT, MILWAUKEE COUNTY.

Heard November 10, 1859.]                    [Decided January 4, 1860.

*Partition—Estoppel.*

Upon a complaint for partition against certain persons named, and others as un-
known owners, and publication of notice pursuant to the statute, a person in
possession claiming to hold a part of the land in severalty, and by a title para-
mount to that of the parties actually named in the proceedings, and who was
not named as a party, and had no actual notice of the commencement or pendency
of the proceedings, is concluded by the judgment, "as an unknown owner,"
there being no evidence of fraud or collusion in the commencement of the ac-
tion, or procuring of the judgment; and his title is bound thereby.

This was an action commenced by Charles D. Nash against
Benjamin Church as owner, and Frederick Buchmann as ten-
ant, for the recovery of lot 7 in block 30, in the sixth ward of
the city of Milwaukee. The defendants denied the title of
the plaintiff and claimed title in themselves. On the trial the
plaintiff read the patent from the government for the quarter
section in which the lot lay, and then relied on the record of
an action for partition of the quarter section, in the circuit
court of Milwaukee county. This bill for partition was filed
August 19th, 1850, by Wilder Pierce and Ichabod Smith, as
complainants, against Hans Crocker, Richard G. Owens, Har-
man Haertel, Philo White, William R. Thompson, John Cal-
houn, Hugh T. Dickey, John B. Baeubien, Theodore W. Par-
ker, Edwin A. Norton, Joseph C. Orr, Francis C. Sherman,
Charles B. Tatham, Edwin A. Norton, Lewis F. Jamieson,
E. Rossman, John T. Allen, and Christopher S. Hubbard, and
the unknown owners of the quarter section, as defendants.

The bill alleged that the complainants were seized in fee
simple of an undivided interest of 19:87 acres in the quarter,
as tenants in common with the defendants, or such of them as
have an interest in it, as is hereinafter shown; that the quar-
ter section, except a reserved acre, contained 159 acres.

That by the records of Milwaukee county, the defendants
had interests as set forth in the bill, amounting in all to about

155 acres.   The following is the only allegation in the bill relating to unknown owners or their interests :

" And your orators further show that they are informed and believe, that divers of said defendants have, by deeds, respectively, conveyed portions of their interests to persons unknown to your orators; and that in setting forth the interests of the defendants, they have been guided by information received from the records in the office of the register of deeds of Milwaukee county.   And your orators further show, that such portions of the tract as do not belong to the defendants, and to your orators, belong to unknown owners."

The bill also sets forth that about the 16th day of June, 1836, the defendant, Sherman, and one C. Beers, then owning or pretending to own, a large interest in the premises, plotted the same into lots and blocks, under the name of Sherman's Addition to Milwaukee, which plat was duly received for record on the 20th day of July, in the office of the register of deeds for Milwaukee county.   That a verbal partition was made among several owners of interests, according to this plat, for convenience in paying taxes, and that many conveyances of specific lots were made according to such plat and partition, but the partition was not legally authorized or binding at law.   The complainants pray the court in ordering partition, to direct that, as far as practicable, the verbal partition might be confirmed, and acts and conveyances of specific lots, according to the partition, might be made good.

The lot in question in this suit was not mentioned in the verbal partition.

On the 7th of December, 1850, an order was made for publication to bring in the unknown owners; which was duly published.   On the 3d of May, 1851, Tatham answered, setting forth the amounts and particular lots he was entitled to by the verbal partition.

On the 10th of May the abstract of title was filed; and Crocker, Norton, Haertel and Beaubien answered.   At the same time an order was entered defaulting Calhoun and the unknown owners, for having neglected to appear in the action. Also an order referring it to a referee to inquire and report whether the premises were so situated that a partition thereof could be made without prejudice, &c., who reported that it could be divided.   And final decree was entered the same day, which set forth, " That the rights, titles and interests of the parties, complainants and defendants, in and to the prem-

ises whereof partition is sought, are as follows, to wit: Ichabod Smith has undivided 9.937½; Wilder Pierce has undivided 9.937½; Hugh T. Dickey has undivided 8.200; Hans Crocker has undivided 2.50; Joseph C. Orr has undivided 5.00; Charles B. Tatham has undivided 27.00; Thomas L. Ogden has undivided 42.425, and unknown owners have undivided 4.00 acres. That the interest of Ogden was acquired as follows: From Edwin A. Norton 29.933; from Theodore W. Parker 2.867; from Charles B. Tatham 9.625 acres, pending the suit for partition. "That the said premises" be "divided into lots and blocks, and a plat thereof be made, corresponding with the illegal plat heretofore made thereof, and referred to in the said bill, as nearly as may be, consistently with making the streets, running through the said premises in a northerly and southerly direction, to connect with and conform to the corresponding streets in the second ward of the city of Milwaukee, and corresponding with any streets which are now legally established over the said premises." Also, that partition be made according to the several interests of the parties as so ascertained. That the voluntary verbal partition referred to in the pleadings, so far as the same has been ascertained, be made the basis of the partition, so far as it is a fair partition according to the rights of the parties, and considering the present value of the several lots."

On the 3st day of May, 1851, the oath and report of the commissioners for partition were filed. The report was accompanied by a plat of Sherman's Addition, made under the direction of the commissioners. The commissioners reported, among other things, that they allotted and set apart lot 7, block 30, in said Sherman's Addition, as designated upon the plat accompanying their report, among other lots, to Thomas L. Ogden; also that they allotted certain specified lots to unknown owners, as and for their interest of four acres in the said 159 acres.

The court, on the 31st day of May, 1851, made a final order or decree confirming the report of the commissioners, and thereby, among other things, "ordered, adjudged and decreed that the said partition, so made by the said commissioners, of all the said land and real estate, be firm and effectual forever." And that said lot 7, in block 30, and other lots allotted and set apart unto Thomas L. Ogden, as and for his part and portion of such premises as designated on the plat annexed to the report of the commissioners," "with the appurtenances,

shall be and hereby are vested in him, the said Thomas L. Ogden, in severalty, to be had, held and enjoyed, by the said Thomas L. Ogden, his heirs and assigns forever."

The plaintiff then read deeds from Ogden to himself, and those through whom he claimed.

The counsel for the defendant then offered in evidence the record of a deed of 29.933 acres undivided, in said quarter section, dated Feb. 2, 1850, executed by Edwin A. Norton and wife, to Thomas L. Ogden. To the admission whereof in evidence, the counsel for the plaintiff objected. 1. Because the record and decree in the partition suit, is conclusive as to the title of the plaintiff and all other persons, and the defendants can only be permitted to show title under and subsequent to the partition. 2. Because there was no legal partition of the quarter of section, until the partition made by the decree now in evidence, and, therefore, any conveyance to the defendants, prior to this partition was simply void. The court sustained the objections and ruled out the evidence offered.

The counsel for the defendants again offered the deed from Norton to Ogden in evidence, to be followed by other deeds of conveyance, tracing the title of Thomas L. Ogden back to its original source, and showing that the title and interest of Ogden at the time of the partition, was expressly subject to the right and title of the defendants and their immediate grantors, and that at the time of the said partition suit and decree, between Smith and Pierce complainants, and Hans Crocker and others, defendants, neither Ogden nor any other party named in the record, had any interest or title whatever in or to the lot to recover which this suit is brought. The counsel of the plaintiff objected to this evidence on the same grounds alleged in his objection to the last preceding offer. The court sustained the objections.

The counsel for the defendant again offered the deed from Norton and wife to Ogden in evidence, and offered to accompany the same with proof, showing that at the time the partition, of which the record is in evidence, was made, the defendant, Church, or his grantee, was, and for several years prior to the commencement of the partition suit, had been in the exclusive, actual, and notorious possession and occupation of the lot in question in this suit, claiming to be sole owner thereof in fee and in severalty, and claiming the legal title thereto. To which evidence so offered, the counsel for

the plaintiff objected, for the same reasons assigned in his objections to the two last preceding offers. The court sustained the objections. "

The counsel for the defendants then offered in evidence the certificate of entry of the quarter section, at the United States Land Office, by Daniel W. Patterson, and to follow the same up with a chain of conveyances tending to show, as the defendants claimed, that the absolute legal title to the lot in question, was in the defendant Church before the commencement of the partition suit, and that the defendant Church, or his grantee, claiming under him, was in possession of the lot, occupying and claiming the same as his sole property before, and at the time of the partition suit. The counsel for the plaintiff objected to this evidence on the same grounds alleged for objecting to the three last preceding offers by the defendants. The court sustained the objections, and ruled and decided that such evidence as the defendant's counsel offered and proposed to introduce and present to the jury, was inadmissible and incompetent, and that the partition record, and decree, is, of itself, binding and conclusive evidence of title, as against the defendants herein, and as against all other persons.

The verdict of the jury and judgment were for the plaintiff. And from which this appeal is taken by the defendants.

*Palmer & Stark* for the appellants.

1. The court erred in admitting the record and decree in partition as evidence of title without proof, *aliunde* of title in the person to whom the lot in question was allotted in the partition. We claim that the only parties bound in any way by this partition record, are the persons named as parties and served with process, and their privies. That the court acquired no jurisdiction over unknowr owners, and the decree is void as to them; because, the statute under which the partition was conducted provides that, "in case one or more of such parties, or the share or quantity of interest of any of the parties be unknown to the complainant," &c., " *so that such parties cannot be named, the same shall be set forth in the bill.*" The only allegation in the bill for partition on this point is this. "And your orators further show that such *portions* of said tract as do not belong to said defendants, and to your orators, belong to unknown owners." This allegation is entirely insufficient. 6 Paige, 492; *Hale vs. Chandler,* 3 Mich., 531.

2. The court erred in ruling that this partition record and decree were conclusive evidence of title, and in refusing to permit the defendants below to show, in defense to the action, absolute legal title in Church, in fee, and severalty, and actual and uninterrupted occupation and use of the lot in question by the defendant Church, as sole and exclusive owner of the entire lot, from a time many years before, till long after the partition in defense to the plaintiffs' action. 1. Because the proceedings against unknown owners in this partition were irregular and void. 2. Because the defendants are not included within the description of unknown owners, as intended by the act in view of the nature of the interest and title they held at the time of the partition. 3. Because, under sec. 31, they are not "parties interested in the premises, who were unknown, and to whom notice was given by publishing the same, as in the chapter before directed," and are, therefore, not as such bound by the decree, and precluded from insisting on their legal title to the lot.

The second and third propositions will clearly appear from an analysis of chapter 108 of the R. S. (The counsel here cited and examined the various provisions of the statute.)

From this analysis of a large portion of the chapter, it seems to us plain, that the terms " parties interested," " persons interested," " parties," or " persons having an interest," " persons appearing to be interested," &c., are all convertible terms, describing the same interests and persons ; and the first section furnishes the definition of them all. The only proper parties to a bill for partition, were persons holding or claiming lands " as joint tenants, or tenants in coparceny or common." A person holding the whole or any part of the premises claiming adversely, and excluding all others from the possession of the portion claimed by him in severalty, could not be a proper party to a partition suit. If he were, then plaintiffs not in possession might bring a suit in partition in lieu of an action of ejectment, for the purpose of determining conflicting and adverse claims to real property. It is submitted that no such authority exists under this chapter.

" Parties" or " persons interested" in the premises, mean those interested as " joint tenants, or tenants in coparceny or common," and therefore proper parties, if named, and their interests truly stated, to a bill for partition. If Church had been made a party by name, and his adverse possession under claim of exclusive legal title, had been set forth in the

bill, he might have demurred successfully to the jurisdiction of the court to try his title in this form of action. Or if his adverse possession and title had not been set forth in the bill, he might have set it up, and would thereby have ousted the court of jurisdiction as to him. If then he would not have been a proper party to the suit by name, how can he be deemed to be included under the general term " unknown owners?" or does that term embrace persons who could not be made parties to or bound by the proceedings under any other designation?

The attorneys for Nash attempted to apply to this case certain authorities that a judgment is conclusive as to everything actually tried, or that might have been put in issue and tried between the parties in the action in which the judgment is rendered. This principle, if correct, does not aid the force of the judgment or partition in our case, because—1st. It assumes that we deny that the defendants, Church et al., were parties or privies to that partition, or were served with process in the suit. 2d. It is not true in fact that Church's title set up in defence to this ejectment could have been tried in the partition suit.

On the last point there can hardly be a doubt. Partition in equity was never intended as a substitute for ejectment at law. A bill for partition does not lie where the defendant is in possession, claiming adversely. *Adam vs. Ames Iron Co.,* 24 Conn., 230 ; *Groves vs. Groves,* 3 Sneed, 187 ; *Martin vs. Smith,* Harper, 106 ; *Wilkin vs. Wilkin,* 1 J. C. R., 111 ; *Straughan vs. Wright,* 4 Rand., 493 ; *Clapp vs. Bromagham,* 9 Cow., 530 ; *Burhans vs. Burhans,* 2 Barb., ch. 398 ; *Garrett vs. White,* 3 Ire., 131 ; *Maxwell vs. Maxwell,* 8 id., 28 ; *Toust vs. Moorman,* 2 Carter, Ind., 171 ; *Corbitt vs. Corbitt,* Jones, Eq., 114.

If the title of the plaintiff is denied, the court would formerly send the plaintiff to a court of law, to try his title, before proceeding with partition. *Cox vs. Smith,* 4 J. C. R., 271 ; *Phelps vs. Green,* 3 id., 302 ; *Jenkins vs. Van Schaick,* 3 Paige, 245 ; *Hosford vs. Merwin,* 5 Barb., 51 ; *Manners vs. Manners,* 1 Green Ch. 384 ; *McCalls, Lessee, vs. Carpenter,* 18 How., 297.

There is nothing in chapter 108, of the Revised Statutes, which changes this. Sec. 16 authorizes the " defendant to deny the joint tenancy, or tenancy in common, of any co-defendant," and provides for issues of fact between the parties,

or any of.them, to be tried by a jury. But it is submitted, that when the seizin of the plaintiffs in the bill is denied by a person setting up possession under an adverse title, the plaintiffs cannot, in the same suit, have a trial and determination of the validity of the defendant's title. But the plaintiff must regain the actual seizin, by ejectment, before he can sustain a suit for partition. 3 Paige, 245; 9 Cow., 530. ·

To give the effect to this partition record, against the appellants, which is claimed by Nash, would not only work the greatest injustice, but would operate the greatest fraud in law and in fact upon them. The defendants were in actual and notorious adverse possession of the lot in question, and had been for years prior to the partition suit, claiming the legal title under a deed of conveyance from the then owners of the lot in fee. Such actual possession and occupation were as complete notice of their title, as the.registry of a deed of conveyance. The plaintiffs were bound to take notice; were chargable in law with actual knowledge of their interest, and that it was an adverse possession and claim of title. It was a fraud upon Church and Buchmann, and upon .the court, to ignore this title, and attempt to prejudice the rights of well known parties, by a proceeding allowed only when the parties are in fact unknown, and then withhold from the court the proofs respecting their title.

If Church was bound to appear and defend this bill. for partition, or be ousted from· his possession, and barred of all title and claim to the lot, there is no security whatever to property. The evil needs no illustration, and it is enough to say, that a reasonable construction can be given to the provisions of the law, without involving consequences so fatal to justice.

There are very few authorities upon the effect of such a record; we have found none just in point. The case in 2 Hill, 626, which was relied upon below, came before the appellate court in a very loose shape, and was evidently but little considered; there was, however, no doubt that the plaintiff in that case was seized, and in possession of the premises as tenant in common, and as such entitled, under the statute, to maintain the suit for partition. The defendant held under sheriff's deed on sale of a portion set off to unknown owners, for their share of costs; and the court held that defendant.had a perfect title.

Both in Iowa and New York the statute remedy by parti-

tion is a legal remedy, and issues made are to be tried as in other civil actions. Our statute, however, gives simply an equitable remedy for partition, and by its terms and evident meaning, excludes the idea that it was the intent to try and determine conflicting legal titles.

The proceeding against unknown owners under chapter 108, R. S., is a proceeding in *rem* and in derogation of the common law, and it must be strictly followed, or it will not be binding. *Denning vs. Corwin*, 11 Wend., 647; *Foot vs. Stevens*, 17 Wend., 483; *Castle vs. Mathews*, Lalor's Sup., 438.

*Emmons, Van Dyke & Hamilton*, for the respondent.

It is true that neither Church nor Buchmann were parties to the record by name, in the partition suit of Wilder Pierce and Ichabod Smith against Hans Crocker and others; but they were nevertheless parties within the meaning and sense of the rule of law, and as such bound by the decree, as we will undertake to show. The counsel here cited and commented on the statute; and claimed that the proceedings were binding upon the defendants, and cited *Cole vs. Hall*, 2 Hill, 626; *Castle vs. Mathews*, Lalor's Sup. to Hill and Denio, 438; *Denning vs. Corwin*, 11 Wend., 647; *Foot vs. Stevens*, 17 Wend., 483; *Hart vs. Seixas*, 21 id., 40; Story's Eq. Jur., § 626; *Anon.*, 3 Swanst., 139, note; *Outram vs. Morewood*, 3 East., 346; *Whitmore vs. Shaw*, 8 N. H., 393.

*By the Court*, DIXON, C. J. The positions assumed by the respondents' counsel in the argument of this case, I must say, appeared to me novel and somewhat extraordinary. It seemed to me that if they were correct, we should, so far as the appellants are concerned, be compelled to give one of the most unjust judgments ever pronounced in a court of justice; that every sentiment of equity and justice demanded of us to uphold them in their title and possession, or at least to give them their day in court, for the purpose of establishing them. The idea that, under our statute for the partition of real estate, a party in the quiet and undisturbed possession of his property, could be stripped of it by a judicial proceeding, of which he was entirely ignorant, struck me as being so flagrantly and enormously unjust and oppressive, that I thought it could not

be the law.   The taking of a valid title of a person in pos-
session from him and transferring it to another having no
right to it by a proceeding of which the owner has no knowl-
edge, and in which his title was not directly adjudicated
against him, nor the attention of the court directly called to
it, exhibits a most alarming defect in justice.   Such a pro-
ceeding is opposed to all our notions of law and justice, and
we search with anxiety for some mode of escape from
it.   Such were my impressions of this case at the argument,
and, although I am compelled to adopt the views of the re-
spondent's counsel as the correct law, yet I must confess I
have not been able, nor am I desirous to rid myself of them.

It is not by the rules of the common law, which courts are
at liberty to mould and modify so as to meet the ends of jus-
tice, but by the declarations of the legislature upon a subject
confessedly within their control, that we are to determine this
case.   They, not the court, are responsible for the unjust con-
sequences which may flow from its decision.   They have
prescribed the mode in which parties shall be brought into
court, the form of the proceedings, and the effect of the judg-
ment in actions like that under which the respondent claims
title.   The same power which authorized the wrong must
apply the remedy.   Our solicitude to save the rights of the
appellants has led us to the examination of many cases not
cited by counsel, but, pressed as I am for time, I shall only
notice such as bear most directly on the questions involved.

The first and second objections made by the appellants' coun-
sel to the partition proceeding, viz: That the allegation in the
complaint, as to the existence and interests of parties unknown,
was insufficient, and the affidavit was not sufficient to author-
ize the order of publication, are clearly untenable.   The court
was a court of general jurisdiction, and its finding and deter-
mination of these matters is binding and conclusive in all
collateral proceedings.   The allegations of the complaint, and

the statement of facts in the affidavit, were a substantial com-
pliance with the statutory requirement. Mere irregularities
in judicial proceedings, which are open to objection directly
in the suit, or might be taken advantage of on error or appeal,
cannot be drawn in question collaterally, for the purpose of
avoiding or impeaching the judgment. *Painter vs. Hender-
son*, 7 Barr., 48 ; *Doe vs. Smith*, 1 Carter, Ind., 451 ; *Foot vs.
Stevens*, 17 Wend., 483 ; *Hart vs. Sexas*, 21 id., 40.

The next and most important question is, whether the ap-
pellant, Church, who was, at the time of the commencement
and consummation of the suit for partition, an owner in sev-
eralty, and in possession of a portion of the partitioned prem-
ises, and who was not made a party to the suit by name, or
served with process, is bound by the judgment as one of the
"unknown owners," who were proceeded against by adver-
tisement. I confess that we should have had great doubt
about holding him a party to the suit as an unknown owner,
and, therefore, bound by the judgment, were it not for the
authority of the case of *Cook vs. Allen*, 2 Mass., 461. The
case is so directly in point, the decision by a court of
so great respectability and learning, and the reasoning so
conclusive, that we are compelled to adopt and be gov-
erned by it. The leading facts were like those in the
present case, in almost every particular. The suit was by
writ of entry *sur disseizin*. The action was tried at the
May term, 1807. Cook, the demandant, in support of the
action, gave in evidence the proceedings of the supreme
court, upon a petition of Joseph S. Reed, for partition, in the
year 1800, wherein he asked to have 1000 acres of land set
off to him in severalty, out of a tract of 19,000 acres, which
1000 acres he alleged he held in common and undivided
with others, to him unknown. Upon the petition the court
ordered notice thereof to be given to all persons interested
to appear and show cause why the prayer thereof should not

be granted, pursuant to the provisions of a statute, passed in 1784. The order was executed, and no person appearing, partition was decreed and made. It was shown that the land demanded in the action, and to which Allen the tenant had pleaded *nul disseizin*, was assigned to Reed by the commissioners appointed by the court to make partition; and that Reed had conveyed the same to the demandant. Allen set up title under one Jonathan Frye, who entered upon it upwards of thirty years before, and continued to hold and occupy it, until Allen recovered seizin and possession, by virtue of a mortgage made by Frye to him, in 1787, and which he had forclosed, and ever since possessed the same. Upon the argument in that case, as in this, it was urged that the operation of the statutes was confined to the co-tenants, who were estopped after due service of process under the statute, from contesting the share or property claimed by the petitioner. That the object of the act, and of the process under it, was merely to turn an estate in common into an estate in severalty; that neither the one nor the other were ever considered as furnishing a method of establishing or trying the right of a tenant in common, as against one holding a title adverse to that of the tenants in common. It was further argued, that a judgment of a court binds only parties and privies; that Allen was no party to the judgment, for he claimed nothing as tenant in common; that if he had been named in the petition as a person interested in the land, and personal notice given him, there might have been a pretence for considering him as a privy. But that the whole purpose of the process being to effect a partition of the estate held in common, the tenants in common were the only parties to the process, and notice to all parties interested must be understood to imply notice to the co-tenants alone. The court remarked, that a writ of partition at common law, must name all the tenants as plaintiffs or defendants, and set forth the shares of each; and that

partition must be made among all. That in that state large parcels of land were holden in common, the tenants were numerous and unknown to each other, and their shares unascertainable; and that partition so necessary for the settlement and cultivation of lands, was, therefore, impracticable by writ at common law. After noticing the provisions of the English statute, 8 and 9 Will. 3, c. 31, designed to remedy like inconveniences, and that of their own state, which declared that " the final judgment should be valid to all intents and purposes," and observing that these words were equivalent to those of the English statute, which declared " it should be good, and conclude all persons, whatever right or title they had in the premises ;" the court, by Parsons, C. J., say: " It is reasonable to give the words a construction, by which no person shall be concluded by a partition, where he could not by law be admitted to defend his rights. This construction is conformable to the maxim of the common law, that judgments do not bind the rights of any but parties or privies; understanding by parties all persons who may have been parties on the record, but from their own laches.

" In applying this construction to the statute before us, where in the petition certain persons are named as the cotenants, if partition be made, none are concluded by it, but the persons named, their heirs and assignees. If in the petition the co-tenants are not named, but are supposed to be persons unknown to the petitioner, and notice is given to all persons interested to appear and show cause against the petition, and partition be made, no person appearing, this partition shall conclude all persons whatever, as to their rights of possession. Any person interested was authorized to appear, and by falsifying any allegation of the petition, in a point material to his defense, might have protected his interest. But if he will lie by and refuse to appear, it is a consent that the petitioner may proceed *ex parte,* and he shall be bound by the parti-

tion as fully as if he had appeared, and afterwards made default.

" In a writ of partition, the plaintiff alleges that all the parties to the writ hold together and undivided; so in the petition, where the tenants are not known or named, the petitioner, by declaring that he is seized of an undivided share of the land, in effect alleges, that all persons holding the land, or any part of it, are seized as co-tenants with him. And when judgment is rendered in partition, all the allegations material to the rendition of the judgment are to be considered as facts, and all persons concluded by the judgment are estopped from controverting them. In this case, therefore, Allen, the tenant, cannot be admitted, by showing a disseizin of all the tenants in common, to question the right of Reed, alleged in his petition, and supported by the judgment, as he cannot be considered a stranger to the record, and so not bound by it."

To the other objection, that by a true construction of the statute, the right of possession of no person is, in fact, bound by any proceeding under it, but a tenant in common, they say: " It is a sufficient answer to this objection, in this case, that the tenant having been notified of the petition, in which it appears that the petitioner claimed to hold with him together and undivided the premises, and having a legal right to appear and controvert the petition, and judgment being rendered on his default, he is now concluded from saying that he is not a tenant in common."   " As the statute contemplates a case where the parties are unknown, it must extend to a case where the particular interests, or rights of the parties are unknown. It is, therefore, enough for the petitioner to show his own right, not being cognizant of the rights of the others. And the showing of his own right to be an undivided interest in all the land, amounts to an allegation that all the persons holding the land, or any part of it, hold together, and undivided with

him.   If any man holding the land, or any part of it, by sole
seizin, is named a defendant in a writ of partition at common
law, or in a petition on the statute, and, after service of the
process, is defaulted, there can be no doubt that his right of
possession would be concluded by the judgment.   In this
case the tenant being described by his interest in the land,
according to the petitioner's claim of title, and process being
served on him, if he be not bound by the judgment, the rem-
edy where most necessary, and where 'the mischief is irre-
mediable at the common law, would be at the least useless."

I have quoted at some length from this opinion, partly be-
cause it was not noticed at the trial, but more for its sound rea-
soning, and because the necessity and policy of the law in pro-
viding for proceedings against property of persons unknown
is clearly shown.   If judgments in such proceedings are not
to be held binding and conclusive on all such persons having
an interest both as to the amount and nature of their inter-
ests, like other judgments, then the mischiefs to be remedied
cannot be reached, and partition in many cases becomes an
impossibility.   The law makes the allegation that they are
unknown, and publication of notice equivalent to a suit
against them by name where they are known, and personally
served with process.   If the defendant Church had been sued
by name and served with process, and had made default, no
one can doubt that such default would have been a confes-
sion by him according to the allegations of the complaint,
that he was a tenant in common.   The statute gives precisely
the same effect to the proceeding in the form in which it was
had.   The good faith of the complainants in the partition
suit is not denied.   No fraud or design on their part in omit-
ting to name him as a party and serve him with process is
alleged.   The whole proceeding seems to have been fair on
their part, and his omission as a direct party the result of
ignorance or mistake.

A specific reference to the provision of our statute is un-
necessary. It is sufficient generally to say that the complaint,
which must be verified by oath, shall particularly describe
the premises sought to be divided and set forth the rights and
titles of all persons interested therein so far as the same shall
be known to the plaintiff; that he is required to exhibit
before, and the court to take *proof* of his title; that upon the
hearing of the cause the court shall ascertain from the proofs
taken, in case of failure to answer the complaint, and *declare
the rights, titles and interests of the parties to such proceed-
ings, plaintiffs as well as defendants, so far as the same shall
have appeared; and shall determine the rights of the said
parties in such lands, and render judgment that partition be
made according to such rights; and that such judgment shall
be binding and conclusive.* 1. On all parties named therein,
&c. 2. *On all persons interested in the premises who may
be unknown, to whom notice shall have been given by per-
sonal service, or by publishing the same as thereinbefore direct-
ed ;* and, 3. On all persons claiming from such parties or
persons, or either of them. From these provisions the re-
quirement that the court determine the title and the conclusive
effect of the judgment are evident.

The hardship of the present case arises from the omission
of our legislature to do what that of Massachusetts, Maine
and many other states have done, namely, to provide that
the rights of those persons unknown who have not appeared
and answered, and who claim by paramount title, or to hold
in severalty the whole or any part of the premises mentioned
in the complaint, shall be excepted from the conclusive opera-
tion of the judgment. For the sake of justice to these
defendants it is to be wished that such exception had been
made. It will be observed in the case above cited, that the
conclusiveness of the judgment as to the right of possession
only is affirmed. The action being by writ of entry, the right

of possession alone was contested.   The effect of the judg-
ment as to Allen was only to sever the possession and put
Reed and his assigns in.   The court expressly said that he
was still at liberty to assert his paramount or several title by
writ of right.   See R. S. Mass., 1836, chap. 103, § 38; *Pierce
vs. Oliver*, 13 Mass., 211.

In addition to the cases cited by the respondent's counsel,
showing the conclusive effect of the judgment of partition
upon the right, *Herr vs. Herr*, 5 Barr, 428, and *Doe vs. Smith*,
*supra*, may be referred to as directly in point.   In *Herr vs.
Herr* it was held that a decree of partition by the orphans'
court of Pennsylvania was necessarily as conclusive of the
right as a judgment of partition in a court of law, although
the orphans' court had *no jurisdiction* whatever to try the
title, if an adverse claim was made; whilst in a court of law
the title might be put in issue, and be found by the judgment.
In that case a party having no title under the intestate peti-
tioned for an inquest, alleging a title as tenant in common
which was not disputed by the real heirs.   Upon this allega-
tion a decree of partition was made.   The court say that the
joint tenure was established by the judgment, *quod partitio
fiat*, and was conclusive when coming collaterally into con-
test between the same parties in a subsequent proceeding.
The authority of this case may be considered as somewhat
shaken by the subsequent case of *McClure vs. McClure*, 2
Harris, 134, decided by the same court.   I do not myself
clearly see how they can be reconciled, and yet the doctrine
of *Herr vs. Herr* is expressly acknowledged and sanctioned.
I think *McClure vs. McClure* is one of those *favorable cases
which make bad precedents*.   It cannot be supported on the
doctrines which the court profess to hold.   Somewhat oppos-
ed to these cases are *Tabler vs. Wiseman*, 2 Ohio St., 207;
and *Grice vs. Randall*, 23 Vt., 239; but comment upon them
is deemed unnecessary.   Judgment affirmed.