## RITTER *v.* SCANNELL *et al.*

The lien of an attaching creditor of real estate takes effect immediately upon the levy of the attachment, and the deposit of a copy of the writ, together with a description of the land attached, with the County Recorder.

Such lien cannot be divested by the failure of the Sheriff to make a proper return of the writ.

Nor is it necessary, where the levy is made by posting a copy of the writ on the premises, that the return of the Sheriff should show that the premises were at the time unoccupied.

Our statute prescribes the manner in which real estate may be attached, but contains no express provision requiring that all the acts necessary to a valid levy shall be set out in the return; nor can such a rule be sustained.

The deposit in the Recorder's office of a copy of the writ, with a description of the property attached, is sufficient to operate as notice of the lien to third parties.

A mistake in the date of the Sheriff's return may be corrected at any time.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

Ritter *v.* Scannel.

This was a proceeding to enjoin the sale of certain real property under execution.

It appears that an attachment was levied on the premises on the thirteenth day of November, 1854, and a copy of the writ deposited in the Recorder's office on the same day, with the following return endorsed upon it :

" By virtue of the within writ I have, this thirteenth day of November, 1854, attached all the right, title and interest of the within named defendants, Isaac M. Merrill and Russel Warren, in and to all that piece or parcel of land, situated in the city and county of San Francisco, and marked and numbered on the official map of said city and county as one hundred vara lot No. 195 ; also, water lots 514 and 515, together with all improvements thereon."

The return to the attachment, which was filed in the Clerk's office on the eighteenth of December, 1854, is the same as the above, (except the date) with the addition of the words : " and being on the corner of Washington and Drumm streets, by posting a copy of the within writ on the above described land, and registered the same in the office of the County Recorder."    This return is dated October 30th, 1854.

Plaintiff claims title under a mortgage executed and recorded December 9, 1854, and the question presented is whether the proceedings under the attachment constituted a valid levy, and created a lien on the premises prior to the plaintiff's mortgage.

The objections to the validity of the attachment are :

1st. That the return does not state with sufficient particularity the acts which constituted the levy.

2d. That the return is contradicted, in an important respect, by the copy filed in the Recorder's office.

Plaintiff had judgment, and the defendants appealed to this Court.

*Nathaniel Bennett* for Appellants.

Did the acts of the Sheriff before the ninth day of December create a lien in favor of the attaching creditor ?    The answer to this must depend entirely on the statute.    The first subdivision of sec. 125 of the Practice Act is as follows :

" Real property shall be attached by leaving a copy of the writ with

Ritter *v.* Scannel.

the occupant thereof; or if there be no occupant, by posting a copy in a conspicuous place thereon, and filing a copy, together with a description of the property attached, with the Recorder of the County."

There is nothing here about the return of the Sheriff being necessary to create the lien. The lien exists as soon as these several acts are performed, and the plaintiff is driven to maintain the position that the failure of the Sheriff to make sufficient return destroys a lien already acquired under the attachment. The statute does not specify what evidence shall be required to prove the several acts necessary to be performed by the subdivision above quoted; and in the absence of any particular species of proof being required by statute, these acts may be proved the same as any other acts in *pais.*

The return of the Sheriff is nowhere made evidence, much less the sole evidence, of the performance of the acts mentioned in the first subdivision of sec. 125. It is doubtful whether it is even admissible as evidence; for this section does not mention the return as being any part of the execution of the writ of attachment. Posting a copy in case there be no occupant, and filing a copy with a description of the property attached with the Recorder, are the acts, and the only acts, necessary to create the lien. If these are performed, the lien becomes perfect, irrespective of a return, and may be proved like other facts, whether a return has been made or not.

We offered evidence to prove that all the acts specified in sub. 1 of sec. 125 had been strictly performed by the Sheriff. The Court rejected such evidence, on the ground that the Sheriff's return was the only admissible proof; whereas the Court ought to have permitted such evidence to be given.

As a preliminary observation before entering on the somewhat desultory argument which follows, we remark that a distinction is necessary to be made between the various decisions which have been made touching the point in dispute. These decisions are divided into four different classes: 1st. Where the return of the officer is offered in evidence against *strangers* to the suit; 2d. Where it comes up as between the parties to the proceeding in which the return is made, or their privies; 3d. Where the question arises in a suit or proceeding against the *officer himself;* 4th. Suits in which the rights of *purchasers under the*

*process* are involved ; 5th. Where the question as to the right of the officer, to *amend* his return arises ; and 6th. What kind of evidence is admissible to *prove the return* of the officer.

Now, the decision in one of these classes cannot be taken or considered as decisive of any question arising in either of the other classes ; and it will be found that the apparent contradiction and diversity between the various decisions have arisen from the neglect to make the proper distinction between the different classes of cases.

It requires but a little explanation to show that this case belongs to the fourth class above enumerated.   The return is not offered in evidence *against strangers* to the suit, but is claimed to be the only evidence as against a party to the suit.   This case does not then belong to the *first class*.   The return does not come up *between parties* to the suit in which the return was made, nor *their privies ;* for the plaintiffs were not parties nor privies to the *attachment* suit.   The case, then, does not belong to the *second class*.   Again : this suit is not against the officer who executed the writ of attachment, and therefore cannot come under the *third class*.   It must consequently belong to the *fourth class* ; for it is palpable that it cannot be brought under either the *fifth* or *sixth class*.

The defendants in this suit, then, are to be regarded in the light of *purchasers*.   This action having been instituted to *prevent them from becoming purchasers*, they in fact, stand in a more favorable position than if the sale had been permitted to take place, and they had in fact become purchasers, and their title had then been questioned.   For the plaintiff is obliged not only to make out the strict rule of law in his favor, but he must in addition to this show that he has some positive ground of equity upon which he may interfere in advance and prevent the sale.   So that we may at least assume that the defendants stand in as favorable a position as purchasers : that is, as those who belong to the fourth class above mentioned.

The case of Wheaton *v.* Sutton, (4 Wheat. Rep. 503) is decisive of the point.

In Tennessee, also, it has been decided that the purchaser's title cannot be made to depend on the return (Mitchell *v.* Lipe, 8 Yerg. 179).   The same in New York, in which State the settled doctrine is,

that it is enough for the purchaser that the officer had authority to sell, and did sell; (Jackson, *ex dem.* Kane *v.* Sternberg, 1 John's cases, 153 ; and see Ingersoll *v.* Sawyer, 2 Pick. 279, 280) see also to same effect, Allen on Sheriffs, page 58, edition 1845.

Again, the case of Jackson *v.* Walker (4 Wend. 463) is, in principle, decisive of the case at bar.    There it was held that the identity of property sold under execution might be shown by parol.

The whole doctrine is stated in Jackson *v.* Sternberg (1 John's cas. 153, 155).

We offered to show that the Sheriff had authority to sell ; that he had performed every act necessary to such authority ; and consequently, under the above authorities, he should have been permitted to go on and sell and give a deed to the purchaser, irrespective of any return made or to be made.    For his right to sell depends, not on his *return*, but on his *acts* which he has, in fact, performed.

It will be necessary to notice two cases decided in this Court.    The one is Egerly & Hinckley *v.* Buchanan *et al.* (5 Cal. Rep. 53).    That case does not control ours, for it belongs to the third class of cases above enumerated, it being a proceeding against the Sheriff himself, and his sureties ; and as above stated, the rules applicable to these different classes are widely different.

The other case is Newhall *v.* Provost, (6 Cal. R. 85) the *principle of which,* when closely examined, will be found to be decisive of the present case, *in our favor*.    It was there held that the Sheriff, after having made his return, could not amend it so as to affect the rights of parties which had been acquired before such amendment.    It follows as a corollary from that decision that, if the Sheriff could not, by an amendment made under the direction of the Court, affect rights acquired before such amendment, he cannot by an original return affect rights which have been acquired before such return is made.

According to the principle of this decision, the rights of both parties to this suit must be ascertained by the state of facts existing before the return was made.

In that case the referee excluded the affidavits and evidence offered on behalf of the plaintiff, on the ground that such evidence tended to impeach the return of the Sheriff: just as in our case the Court over-

ruled the evidence which we offered, on the ground that it tended, if not to impeach, yet to supply defects in the return of the Sheriff. This Court decided in Newhall *v.* Provost, that the evidence rejected was admissible ; and it follows therefrom that the evidence offered in our case and rejected, ought to have been received.   See Watson Treaties on Sheriffs (pp. 72–7, Law Library, 52, 53, 72 and 73).

*John Satterlee* for Appellants.

It is the *service* and *execution* of an attachment which gives the attaching creditor his lien or *security*, and not the *return* of the Sheriff.

The proper *service* of an attachment gives the attaching creditor a security which the Sheriff has not the power to divest him of, by a defective or false return.

The plaintiff's lien or security depends upon the *service* of the writ and not on the Sheriff's *return.*   Prac. Act, sec. 125.

The Sheriff may *release* property attached after receiving from defendant an undertaking.   Prac. Act, sec. 123.

But the statute does not say or imply, that he may or can release or discharge property by a defective or false return.   All property "seized and held under attachment in the action, shall be liable to execution."   Cal. Statutes of 1854, p. 62, sec. 24.

The attachment in this case was in fact perfectly executed, as to every body, on the thirteenth of November, 1854.   There was no occupant of the lot.

A copy of the writ was posted in a conspicuous place on the lot.

A copy of the writ, with a description of the property attached, was filed with the Recorder of the county.

The mortgage under which the plaintiff claims, was executed and recorded, and the consideration therefor loaned, December 9th, 1854. At that time the Sheriff had made no return.   The mortgagee had notice of the attachment.   A copy of the writ, with a description of the lot attached, was on file with the County Recorder.

The Sheriff's return did not mislead the mortgagee.   It (the return) was not made or filed until December 18th, 1854.

The filing of the copy of the writ, with a description of the property, with the County Recorder, as to subsequent purchasers or mortgagees, is a sufficient service of the attachment.

The service of a copy of the writ on an occupant, or posting a copy of the writ on the lot, is to give the occupant or owner notice. They are the only persons who can complain of the Sheriff's neglect to do this.

The Sheriff's return is not the only evidence of the service of the attachment. If the return be defective, the attaching creditor or the purchaser are the only persons who suffer inconvenience therefrom. They may be subjected to the trouble and expense of proving service by other evidence. A subsequent purchaser or incumbrancer is not wronged. His information is obtained at the County Recorder's office.

The return is not the only evidence, nor is it the highest evidence, unless the statute of California makes it so.

Nowhere by our statute is the *return* to any process made *evidence*, and least of all the *only evidence.*

The only provision of the statute as to Sheriff's return to an attachment, is to be found in the Prac. Act, sec. 141. " The Sheriff shall return the writ of attachment, &c., with a certificate of his proceedings endorsed thereon or attached thereto."

Under this section, we contend that the return of the Sheriff was sufficient of itself; that he returned all that he was required to return, and that whatever he returned beyond this was mere surplusage.

He is not required to state all the *steps of his proceedings*, nor the manner, nor *course* of his *proceeding* or *proceedings*.

Under the old system, the Sheriff was also required to return his proceeding on a *fi. fa.* He did this simply by the words " *nulla bona*" or " *satisfied* " or " *satisfied* in part," and " *nulla bona as to the residue.*"

Here the Sheriff returns that he had " attached " the property. This is a certificate of his " *proceedings*," and all that was necessary.

If the statute had intended to require the Sheriff to certify fully the *manner* of his executing an attachment, it would have used the language of the statute of 1851, p. 191, sec. 6, with reference to returns to process generally, to wit : " A Sheriff to whom any process, writ, order or paper shall be delivered, shall execute it, &c., &c., and return it without delay to the proper court or officer, with his certificate endorsed thereon, of the manner of its service, &c."

Ritter *v.* Scannel.

The difference between the phraseology of these two statutes should be noticed; the one requiring a " certificate of the *proceeding*," and the other " a certificate of the *manner* of *the service*, &c."

If we are right in this construction, then the return itself of the Sheriff was sufficient proof, and the Court ought to have *found* in *favor of the defendants* upon the *evidence actually admitted*.

The cases decided in Massachusetts, cited by plaintiff's counsel, are cases in which the Courts there decided that purchasers at Sheriff's sales, under a *fi. fa.*, in a peculiar kind of proceeding unknown in California, derived title from the Sheriff's return to the execution, and that certain defects in the return were fatal to purchaser's title.

Judge Satterlee discussed the points raised in the record, at great length, and referred to the following authorities. Ingersoll *v.* Sawyer, 2 Pick. 279 ; Cowen & Hill's N. Phil. ed., 3 vol., 2 part, N. 741, pp. 1092 and 1093 ; 6 Comyn's Dig. 233 ; 5 Coke, 90 : Cro. Elig. 209, 238 ; 1 Salk. 318 ; 2 N. Y. Stat. revised ed. 1836, pp. 288, 358 ; Stat. of Cal. p. 191, sec. 6 ; Prac. Act, sec. 141 ; 2 Caine's cases, p. 63 ; 1 Burrill's Prac., ed. 1846, p. 304.

*J. B. Hart* for Respondent.

The acts necessary to make the attachment are, by leaving a copy of the writ with the occupant of the real estate, if there be one ; if not, then by posting a copy in a conspicuous place thereon, and filing a copy, together with a description of the property attached, with the Recorder of the county.

The return is simply, that he had attached the property, not stating how : this I think is bad.    It is well settled that the truth of the return of a Sheriff cannot be questioned by parol, and is conclusive against him.   (Paxton *v.* Steckel, 2 Penn. State, 93 ; French *v.* Stanley, 21 Maine, 512 ; Haynes *v.* Small, 22 Maine, 14 ; Denny *v.* Willard, 11 Peck, 519.)

To permit a Sheriff to make his return to an attachment in a careless and reckless manner, and then after rights of third innocent parties have intervened, to prove by parol the act necessary to make the attachment good, " would be opening the door to infinite laxity and fraud, and mischiefs incalculable."    The fact of leaving a copy of the writ

with the occupant of the property, or posting a copy in a conspicuous place, if no occupants, is an act that renders the attachment good by being public, and calculated to give notice to the world of it, and enable parties to be on their guard in dealing for the property attached; and to omit it, renders it void as to third innocent parties.   Now doing the thing the law requires, would give to third parties notice of the lien, and prevent them from dealing in regard to it.   The return on the attachment is the record evidence of the fact, if it had been done ; and its not having been so recorded in the return, the return itself is bad, and the attachment void for want of a proper record of the facts or acts that render the attachment perfect.   If the truth of these important acts may depend upon the recollection of deputies, the acts of a Sheriff will always be made good, and frauds easily perpetrated in that way.

The rights acquired under the law of attachments are the creations of statute.   The law should be strictly performed, and the return of the officer should show it.

The attachment confers rights upon the creditor so soon as executed and the return of it made ; the property attached is held to pay the debt that may be recovered ; it is like the equitable writ of sequestration ; in that proceeding the property is taken possession of by the Court, through its officer, the change of possession is notorious ; in that way the public are put upon their guard.   Upon the vendi the property is ordered to be sold, and the acts of an officer on a vendi are like the proceeding on sequestration, public.   The law of the English writ of *elegit* requires that the Sheriff should set out in his return every act necessary to show affirmatively that all the personal property (except the beasts of the plough) of the debtor was taken ; a jury empanneled, who made inquiry of the goods and chattels of the debtor and appraised the same, and if not enough to pay the debt at the appraisement, then to inquire as to the land; and upon such inquisition that he delivered all the goods and chattels, (except the beasts of the plough) and a moiety of the lands to the plaintiff.   The reason given why such particularity is required in the return is, that the inquisition and return constitute the title of the plaintiff to the

property given him by the Sheriff.    3 Bacon, title Execution, article C., sec 2, p. 688 ; 2 vol. Jacob. Dec. 371.    The rule in regard to this writ is different from that applicable to the writ of *fieri facias*, because the return is not evidence of title to the purchaser, the sale and Sheriff's deed are sufficient evidence of title.    If the purchaser can show that the Sheriff had authority to sell, it is enough ; he need not look further.    5 Cow. Rep. 529.    The proceedings on the writ of *elegit* operates a transfer of title by appraisement, from debtor to creditor of personal property, and transfers to creditor possession of moity of real estate as tenant.

The *fi. fa.* takes from the debtor his personal property, and by the Sheriff it is sold to any one who may choose to become purchaser ; this is a transaction between Sheriff and stranger ; the other is between creditor and debtor.    Through the agency of the Sheriff the lien of the attachment is intended to be given by acts that are public and notorious, and evidenced by the return ; and without those acts appear affirmatively to have been done, there is no lien created.

TERRY, C. J., after stating the facts, delivered the opinion of the Court—BALDWIN, J., concurring.

The objections to the validity of the attachment are :

1st. That the return does not state with sufficient particularity the acts which constituted the levy.

2d. That the return is contradicted in an important respect by the copy filed in the Recorder's office.

Upon the first point it is contended that every act which is, under the statute, requisite to the validity of an attachment of real estate, should be affirmatively shown by the return ; and that inasmuch as it is shown in this case that the levy was made by posting a copy of the writ on the premises, the return should show that the premises were at the time unoccupied, in which case only could a valid levy be made in the manner stated.

Our statute prescribes the manner in which real estate may be attached ; but contains no express provisions requiring that all the acts necessary to a valid levy shall be set out in the return, and we think the rule contended for was not contemplated by the Legislature,

that it is not warranted by the language of statute, or supported by authority. The general rule with regard to the execution of mesne process is, that all presumptions are in favor of the regularity of the acts of the officer, and that a return which simply states that the process was executed is sufficient, *prima facie,* to show a due and proper execution. (See Kuthley *v.* Tisdale, 2 How. Miss. 683 ; *Ib.* 737 ; 3 *Ib.* 35.)

The authorities cited by the respondent (14 Mass. 20, and 4 Phil. Ev. 804) in support of his construction, are decisions upon returns to executions under statutes authorizing the lands of the debtor to be appraised and delivered to the plaintiff at their appraised value in satisfaction of his judgment, and if not redeemed within a time limited, to vest absolutely in the judgment creditor. In such cases, as the return constitutes an important part of the party's title, the utmost particularity of statement is required, and a slight omission will vitiate the levy. But a very different rule obtains with regard to attachments. In 11 Pick. 348, the Supreme Court of Massachusetts says :

" There is a manifest distinction in principle between a process which divests the title of the debtor, and transfers his property against his will, and one which merely creates a lien."

In other States, where a sale under execution is required to divest the title of the debtor, a different rule has been established ; and it has been held that the title of a purchaser at Sheriff's sale depends upon the *execution, levy, and sale,* and cannot be affected by the return. In Jackson *v.* Sternbergh, (1 John. cases) the Court says : " But the Sheriff's return, in my opinion, was not essential to the title of the purchaser ; that title was not created by or dependent on the return, but was derived from the previous sale made by the Sheriff by virtue of his writ. * * * The sale and the Sheriff's deed are sufficient evidence of the title ; and if the purchaser can show that the Sheriff had authority to sell, it is enough, and he need look no further."

The case of Mitchell *v.* Lipe (8 Yerger, Tenn. 179) is to the same effect. In the case of Wheaton *v.* Sexton (4 Wheaton, 503) plaintiff claimed title as a purchaser at a sale under an execution which had never been returned, the sale having taken place after the return

return day of the writ. The Court instructs the jury that : " If the writ *fi. fa.* was levied by the Marshal upon the property in question before the return day of the writ, it was lawful for him to sell the same under and by virtue of said writ, and that the facts respecting said sale might be proven by parol."    An exception was taken by defendants to this instruction ; and upon appeal, the Supreme Court of the United States said in reference to it : " The Court below was unquestionably right in the instruction.    The purchaser depends on the judgment, the levy, and the deed ; all other questions are between the parties to the judgment and the Marshal.    Whether the Marshal sells before or after the return day ; whether he makes a correct return, or any return at all to the writ, is immaterial to the purchaser, provided the writ was duly issued, and the levy made before the return day."

It seems to follow from these authorities that the lien of the attaching creditor took effect immediately upon the levy of the attachment, and the deposit of the copy, with a description of the land attached, with the County Recorder, and that it could not be divested by the failure of the Sheriff to make a proper return ; and if we admit that the return is not *prima facie* evidence of a proper levy, that the defendant should have been permitted to prove the fact by other competent evidence.    The statute does not make the officer's return conclusive, or the only evidence of the manner of executing process ; and in a case like the present, we see no reason why the facts may not be shown by other competent evidence, especially as it is not attempted to contradict the return.

The deposit in the Recorder's office of a copy of the writ, with a description of the property attached, was sufficient to operate as notice of the lien to third parties.    The plaintiff's mortgage was taken with this notice ; and as it was executed before the Sheriff returned the process, he cannot be said to have been misled to his prejudice by the return.

The objection that the return is contradicted by the endorsement on the copy of the writ filed with the Recorder is not tenable.    The only discrepancy is in the date of the return ; and it has been often held that a mistake in the date may be corrected at any time.    (Drake on Attachments, secs. 215, 217.)

Judgment of the Court below reversed, and a new trial ordered.