HON. DANIEL M. VALENTINE, }
HON. WILLIAM A. JOHNSTON, } ASSOCIATE JUSTICES.

---

## L. W. HEAD v. A. T. DANIELS, et al.

1. JUDGMENT, *Not Held Void, When.* A judgment when attacked collaterally will not be held to be void merely because the pleading upon which it is based seems to show upon its face that the action when commenced was barred by some statute of limitations.

2. STOCKHOLDER—*Sufficient Allegation of Liability.* The petition sufficiently alleged the defendant's liability as a stockholder in a corporation, upon a judgment rendered against the corporation, and sufficiently alleged that no property of the corporation could be found whereon to levy an execution.

3. PUBLICATION NOTICE, *When Sufficient.* A publication notice need not necessarily mention the names of any of the defendants except those against whom it is desired to obtain service of summons by publication; and generally where the publication notice is sufficient to advise the defendant against whom the service of summons is sought, of the nature and character of the action brought against him, and of his interests which are sought to be affected by the action, it is sufficient.

4. AFFIDAVIT—*Sufficiency.* The sufficiency of a certain "affidavit of non-residence" discussed, and the affidavit *held* to be sufficient as far as it goes; and *further held,* that in this case it is immaterial whether such affidavit is sufficient or not.

5. AFFIDAVITS, *Presumed Sufficient.* Where two affidavits are filed in a case, one to authorize the issuing of an order of attachment, and the other to authorize the service of summons by publication, and after-

1—38 KAS.

38   1
42   199
42   200
42   203

38   1
43   350
43   491

38   1
46   736

38   1
51   340
52   793

38   1
57   94

38   1
62   564

38   1
70   474

38   1
75   676

38   1
76   913

38   1
79   431
80   495

38   1
81   712
82   40

Head v. Daniels.

ward an order of attachment is issued and served, and service of summons by-publication is made, and a judgment is rendered, and afterward the affidavits are lost or destroyed, *held*, that in the absence of anything to the contrary, and when attacked collaterally, it will be presumed that-the affidavits were sufficient.

6. ATTACHMENT—*No Undertaking, When.* Where all the defendants against whom an order of attachment is issued are non-residents of the state of Kansas, it is not necessary that any undertaking should be given, although there may be other defendants in the case, who are not non-residents.

7. CIVIL CODE—*Valid Provision.* That clause of §192 of the civil code which provides that "no undertaking shall be required where the party or parties defendant are all non-residents of the state, or a foreign corporation," is not unconstitutional or void.

8. ATTACHMENT—*Return—Duty of Officer.* Where the officer's return of an order of attachment shows that the officer attached certain real estate, and when he attached the same, and that he posted a copy of the order of attachment in a conspicuous place upon the attached premises, but does not show whether there was any occupant or not of the premises, *held*, that in the absence of anything to the contrary, it will be presumed that the officer did his duty when he attached the property, and that there was in fact no occupant of the premises.

9. SHERIFF's DEED, *Executed by ex-Sheriff, Valid to What Extent.* Where a sheriff levies an execution upon real estate, and advertises the property for sale, he may then sell the same, although his term of office expires two days before the sale; and where the sale is afterward confirmed, and the sheriff ordered to make a deed to the purchaser, and the purchase-money is all paid, and the ex-sheriff executes a deed to the purchaser, and the purchaser takes the possession of the property, *held*, that the purchaser obtains such an equitable title to the property that he cannot afterward be ejected from the premises by the defendant in the execution, or by any person claiming under him, whether such sheriff's deed is valid or not. And, *query:* Is not such sheriff's deed valid?

10. JUDICIAL PROCEEDINGS — *Collateral Attack — Practice.* Collateral attacks upon judicial proceedings are never favored; and when such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void, but will be held to be valid. Irregularities alone are not sufficient to destroy the validity of judicial proceedings; nor are mere omissions from the record. On the contrary, it will generally be presumed, in the absence of anything to the contrary, that all that was necessary to be done with respect to any particular matter, by either the court or its officers, was not only done, but rightly done.

*Error from Shawnee District Court.*

EJECTMENT, by *Head* against *Daniels* and *Ryan.* Trial by
the court, and judgment for defendants, on December 28, 1885.
The plaintiff brings the case here. The facts are substantially
stated in the opinion.

*Waters & Chase,* and *E. F. Hilton,* for plaintiff in error.

*J. W. Campbell, C. M. Foster,* and *A. Bergen,* for defendants
in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of eject-
ment, brought by L. W. Head, on May 12, 1883, in the district
court of Shawnee county, against A. T. Daniels and A. J.
Ryan, to recover certain real estate situated in said county.
The case was tried before the court without a jury, and on
December 28, 1885, judgment was rendered in favor of the
defendants and against the plaintiff; and the plaintiff, as plain-
tiff in error, brings the case to this court.

The principal facts, stated briefly, are substantially as fol-
lows: The land in controversy belonged originally to Mary
E. Denton; the plaintiff claims under her by virtue of a quit-
claim deed, and the defendants claim under her by virtue
of a sheriff's deed executed to A. T. Daniels; together with
other facts connected therewith. The sheriff's deed was exe-
cuted and recorded more than a year before the quitclaim deed
was executed. The facts upon which the sheriff's deed is
founded are substantially as follows: On April 6, 1874, New-
ton Maxwell recovered a judgment in the district court of
Osage county, against the Osage Coal & Mining Company, for
$1,144, with interest and costs. On September 26, 1874, an
execution was issued on such judgment, and was returned in
proper time, not satisfied. On September 26, 1879, another
execution was issued on such judgment, and it also was re-
turned in proper time, not satisfied. On January 28, 1881,
Maxwell filed a petition in the district court of Shawnee

county, ostensibly for the purpose of commencing an action against Charles Rath, Mary E. Denton, and others, to recover the amount of the aforesaid judgment, and alleged therein, among other things, that the Osage Coal & Mining Company was a corporation, and that the defendants were stockholders therein. Service of summons was made personally upon Rath, and was made by publication upon Mrs. Denton, but no service of summons of any kind was ever made upon any one of the other persons named in the petition; nor was any summons issued against any one of them; nor did any one of them ever appear in the case. Charles Rath appeared, but the action was afterward dismissed as to him, and thereafter it was prosecuted only as an action against Mrs. Denton. On June 7, 1881, an order of attachment was issued in the case against Mrs. Denton, and on June 8, 1881, it was levied upon the property in controversy, and service of summons was then made upon Mrs. Denton by publication, the first publication being on June 10, 1881. She made no appearance in the case. On October 4, 1881, judgment was rendered in the case against her. On December 6, 1881, an order of sale was issued on such judgment, and placed in the hands of W. D. Disbrow, who was then the sheriff of the county. He immediately gave notice that the property would be sold on January 17, 1882. His term of office expired on January 15, 1882, and H. E. Bush became sheriff. On January 17, 1882, Disbrow, as sheriff, and in the manner prescribed by law, sold the property to A. T. Daniels for $1,281 cash, and on the same day the sale was confirmed by the court, and said "sheriff" was ordered to make a deed for the property to the purchaser; and on January 18, 1882, Disbrow, in pursuance of such order, and as sheriff of the county, executed such deed, which is the sheriff's deed under which the defendants now claim. It is regular in form, and was recorded on the same day on which it was executed. Daniels immediately took the possession of the property under this deed, and has remained in the possession thereof ever since. From the proceeds of said sale, Maxwell's judgment was paid, and the surplus of the proceeds,

to wit, $183.15, was paid to somebody, but whether to Mrs. Denton or not, is not shown; but it is shown that it was not paid to Daniels, or to his attorneys.   The quitclaim deed from Mrs. Denton to the plaintiff was executed on May 5, 1883, and was recorded on May 12, 1883.

The first ground for reversal urged by the plaintiff is, that the judgment rendered in favor of Maxwell and against Mrs. Denton is void, and this claim is urged upon the further claim that the petition in the action of Maxwell against Mrs. Denton did not state facts sufficient to constitute a cause of action, and this claim is urged upon the following grounds: First, the petition shows upon its face, and affirmatively, that Maxwell's cause of action was barred by a three-years statute of limitations.   Second, such petition did not allege, as is required by § 32 of the act relating to corporations, that "there cannot be found any property whereon to levy such execution."

I. It is believed that no decision can be found wherein it is held that a judgment is void merely because the pleading upon which the judgment is based seems to show upon its face that the action was barred by some statute of limitations. Certainly no such decision has ever been made by the supreme court of Kansas.   In Kansas it has been held that where the petition or bill of particulars in a justice's court shows upon its face that the cause of action is barred by some statute of limitations, such petition or bill of particulars will be held to be insufficient, provided the question of the statute of limitations is specifically raised in the trial court. (*Zane v. Zane*, 5 Kas. 134.)   But courts do not hold that a cause of action is barred by a statute of limitations, unless the question has been raised in some manner before judgment.   There are so many exceptions which will take a cause of action out of the statute, that the courts will presume, unless the question is specifically raised before judgment, that the cause of action is not barred. Besides, the moral obligation to pay a debt after it is legally barred by some statute of limitations is as binding upon the debtor as it was before such debt was so barred; and hence it would seem proper, where the question of statutory bar has

not been raised in the trial court and before judgment, to consider it as having been waived. It was shown in the case of Maxwell against Mrs. Denton that she was a non-resident of the state of Kansas, and therefore in all probability no statute of limitations ever even commenced to run in her favor, and in such a case it would have been futile for her to have interposed the defense of any such statute. But what statute could she rely on? What statute if any, could have commenced to run in her favor? A two-years statute, or a three-years statute, or a five-years statute, or some other statute? And when did such statute commence to run? When does a cause of action accrue against a stockholder in a corporation? Is it when the cause of action first accrues against the corporation itself? or when the judgment thereon is rendered against the corporation? or when the first execution is returned unsatisfied? or when some subsequent execution is returned unsatisfied? *or may the action be brought against a stockholder at any time while the judgment against the corporation is in force?* All these questions are judicial in their character, and none of them has ever been determined by this court. Mere defects in a petition do not render the judgment subsequently rendered upon it void. Even a petition which might be held to be insufficient, if challenged by a demurrer, or in some other manner before judgment, might in many cases be held to be sufficient to sustain a judgment subsequently rendered upon it, where the judgment is attacked only indirectly and collaterally. If the petition sets forth facts sufficient to challenge the attention of the court with regard to its merits or authorize the court to deliberate with respect thereto, then the judgment subsequently rendered upon it is not void, but at most is only voidable, and it cannot even then be held to be voidable except when it is attacked directly and in a direct proceeding. (*Greer v. Adams,* 6 Kas. 203; *Rowe v. Palmer,* 29 id. 337; and cases hereafter cited.)

II. The petition in the action of Maxwell against Mrs. Denton alleged, among other things, "that both of the said executions remain wholly unsatisfied, by reason that there

cannot be found any property belonging to said corporation whereon to levy." Also, the returns of the sheriff on the executions were attached to and made a part of the petition, and both of such returns show that no property could be found whereon to levy. This, we think, sufficiently answers the point made by the plaintiff, that the petition does not allege that "there cannot be found any property whereon to levy such executions."

III. The next ground for reversal, numbered "second" in the plaintiff's brief, is, that the publication notice in the case of Maxwell against Mrs. Denton is not sufficient, and this for the reason that the notice does not give the names of all the defendants in the action. The notice, in its title, gives the names of the parties as follows: "Newton Maxwell, plaintiff, v. Charles Ruth, Mary E. Denton, et al., defendants." There were really no defendants in the action except Charles Rath and Mrs. Denton, for no service of summons upon the other persons whose names are found in the petition was ever made, and the notice gave the names of Rath and Mrs. Denton, except that the name of Rath was given as "Charles Ruth." Mrs. Denton was the only person upon whom it was desired to obtain service of summons by publication, and after giving the title of the case in the publication notice, as above stated, the notice then proceeded as follows: "Mary E. Denton, of Middleton, New York, is hereby notified that she has been sued," etc. The notice was in all respects, except as above mentioned, formal and sufficient; and we think it was sufficient in every respect, and valid. It was sufficient to advise Mrs. Denton of the nature and character of the action brought against her, and of her interests which were sought to be affected by the action, and was to her a substantial compliance with all the requirements of the law. This was certainly sufficient.

IV. It is claimed by the plaintiff that a certain affidavit found in the case of Maxwell against Mrs. Denton, and entitled "affidavit of non-residence," is void. We think, however, that this affidavit is valid as far as it goes; and in this

connection, and in answer to the plaintiff, we might also state that in this state "all contracts which by the common law are joint only, shall be construed to be joint and several," and "in all cases of joint obligations and joint assumptions of co-partners or others, suits may be brought and prosecuted against any one or more of those who are so liable." (Comp. Laws of 1885, ch. 21, §§ 1, 4.) And the affidavit as given in the record of this case sufficiently shows that service of summons could not be personally made upon Mrs. Denton within this state. But even if this affidavit were void, it could make no difference in this case, for there were two other affidavits presumably sufficient.

V. But it is claimed by the plaintiff that the two affidavits above mentioned are void, and that all the subsequent proceedings based thereon are also void. One of these affidavits was to authorize the issuing of the order of attachment, and the other was to authorize the service of summons by publication. These affidavits were made and properly filed in the case of Maxwell against Mrs. Denton, but afterward they were lost or destroyed, and consequently could not be introduced in evidence on the trial of this case. There is nothing in the record, however, tending to show that either of them was not sufficient, and from anything appearing in the record, both of them may have been amply sufficient. As to what evidence was introduced with regard to their sufficiency or insufficiency, or as to the sufficiency or insufficiency of their contents, the record is silent. And for this reason the plaintiff claims that we should presume that they are void, and cites the case of *Hargis v. Morse*, 7 Kas. 415, as authority. That case, however, hardly goes to the extent claimed for it; and besides, the principles enunciated in that case have been greatly modified, and some of them overruled by subsequent decisions. (*Shields v. Miller*, 9 Kas. 390, 396, 397; *Bixby v. Bailey*, 11 id. 359; *Bartlett v. Feeney*, 11 id. 593; *Ogden v. Walters*, 12 id. 282, 292; *Haynes v. Cowen*, 15 id. 637, 645.) Indeed, about all there is in the case of *Hargis v. Morse*, 7 Kas. 415, which can be considered as favoring the contention of the plaintiff, has

been overruled. (*Haynes v. Cowen*, 15 Kas. 645.) Now as there is nothing in the record tending to show that the affidavits were insufficient, and as the attack now made upon them is collateral and not direct, we think it must be presumed that they were amply sufficient. (See also the authorities hereafter cited.)

VI. In attachment cases where the defendants are residents of the state of Kansas, the statute requires that an undertaking shall be given on the part of the plaintiff, "but no undertaking shall be required where the party or parties defendant are all non-residents of the state, or a foreign corporation." (Civil Code, § 192.) Section 190 of the civil code provides that attachments may be had against any one or more of several non-resident defendants; and we think the above-quoted clause of § 192 of the civil code, which provides that "no undertaking shall be required where the party or parties are all non-residents," simply means to provide that no undertaking shall be required where the party or parties defendant in the attachment proceedings, or the party or parties against whom the order of attachment is issued are all non-residents, and does not necessarily include all the parties defendant in the case. In this state, and with respect to the defendants, all causes of action, all suits, and all judgments, are several, although in many cases they may also be joint. But from anything appearing in this case all the parties defendant, indeed all persons that were mentioned in the petition, may have been non-residents. But even if all the persons mentioned in the petition were parties, and even if they were all residents of Shawnee county, and even if an attachment bond was required in this case, would the failure to give it render the judgment subsequently rendered void when attacked collaterally as in this case? In Ohio it has been held that it would not render even the attachment void. (*O'Farrell v. Stockman*, 19 Ohio St. 296.)

VII. It is also claimed by the plaintiff that the foregoing provision of § 192 of the civil code, dispensing with the undertaking in attachment proceedings, where the defendants in the

attachment are all non-residents, is unconstitutional and void, and this claim is made upon the ground that such provision violates § 2 of article 4, and § 1 of article 14 of the constitution of the United States, and § 17 of the bill of rights of the constitution of Kansas. We think the statute is constitutional and valid.

VIII. The plaintiff further claims that the entire proceedings in the case of Maxwell against Mrs. Denton are void, for the reason that the officer's return on the order of attachment shows that he served the order by simply posting a copy of the order in a conspicuous place upon the premises, and that it fails to disclose any reason for such substituted service. He claims that because the officer did not state in his return that there was no occupant of the premises, the return and all the subsequent proceedings in the case are void. Section 198 of the civil code provides that "when the property attached is real property the officer shall leave with the occupant thereof, or, if there be no occupant, in a conspicuous place thereon, a copy of the order;" and § 205 of the civil code provides that "the officer shall return upon every order of attachment what he has done under it. The return must show the property attached, and the time it was attached." And there is no statute requiring that the officer shall state what he did not do under the order of attachment, or that he shall give any reason for doing what he did in fact do under the order. The presumption always is, in the absence of anything to the contrary, that an officer does his duty; and in all probability he did his duty in this case. In all probability there was no occupant of the premises in question. Mrs. Denton was a non-resident of the state. We think the sheriff's return in the present case is sufficient. As lending support to the correctness of these views, see the following cases: *Wilkins v. Tourtellott*, 28 Kas. 835; *Rowan v. Lamb*, 4 G. Greene, 468; *Redus v. Wofford*, 4 Smedes & M. 579; *Ritter v. Scannel*, 11 Cal. 238, 247, 248; *Porter v. Pico*, 55 id. 165, 172; *Watt v. Wright*, 66 id. 208.

IX. The next and last claim urged by the plaintiff is, that the sale of the land was made by an ex-sheriff and the deed

was executed by an ex-sheriff, and therefore that the sale and deed are void. The sale and deed were made by the sheriff who received the writ, who levied upon the property, and who advertised the same for sale; but the sale was made two days after his term of office expired, and the deed was executed three days after his term of office expired. It is a general rule that the officer who commences to execute a writ of execution, or an order of sale, must complete the execution thereof. And it is also held that the execution of the writ is not fully completed until the deed for the property sold has been executed. ( *Tuttle v. Jackson,* 6 Wend. 213, 224.) It is therefore generally held that the officer who levies upon the property, and advertises the same for sale, should not only sell it, but should execute the deed therefor, although his term of office may expire before the sale is made or before the deed is executed. (See case last cited, and also *Anthony v. Wessell,* 9 Cal. 103; *Lemon v. Craddock,* Lit. Sel. Cas. 252; *Porter v. Mariner,* 50 Mo. 364.) And in California it is also held that where a sheriff's term of office has expired, the court may, independent of the statute, appoint a suitable person to execute the deed. ( *The People v. Boring,* 8 Cal. 406.) In Kansas it is provided by statute as follows:

"SEC. 109. Sheriffs, under-sheriffs and deputies may execute and return all such writs and processes as shall be in their hands at the expiration of their office, or at the time of their removal from office, which they shall have begun to execute by service, levy or collection of money thereon." (Comp. Laws of 1885, ch. 25, § 109.)

"SEC. 459. The sheriff or other officer who, upon such writ or writs of execution, shall sell the said lands and tenements, or any part thereof, shall make the purchaser as good and sufficient deed of conveyance of the lands and tenements sold as the person or persons against whom such writ or writs of execution were issued could have made of the same, at or any time after they became liable to the judgment." (Civil Code, § 459.)

There is nothing in any of the statutes of Kansas that tends in the least to modify the provisions of the first section above quoted. The provisions of the second section above quoted

may, however, be modified to some extent by the provisions of § 465 of the civil code. Section 465 provides among other things that when the term of office of the officer who made the sale has expired, or if he "*shall be absent*, or be rendered unable by death or otherwise to make a deed, . . . any succeeding sheriff or other officer," may, by order of the court, make the deed; and then the statute provides "such deed shall be as good and valid in law, and have the same effect, as if the sheriff or other officer who made the sale had executed the same." (Civil Code, § 465.) We think the sale in the present case was unquestionably valid; and as it was confirmed by the court and a deed ordered to be executed thereon, and as the purchase-money was all paid by the purchaser, and as he immediately took the possession of the property and has been in the possession thereof ever since, we think he obtained at least a valid, equitable title to the property, whether the deed itself is valid or invalid, and this is all that the court below decided in the case, and hence it is not necessary for us to express any opinion with reference to the validity or invalidity of the deed. We would think, however, under the statutes construed in connection with the common law, that the deed made by the ex-sheriff who sold the property is valid. We are inclined to think that in cases like the present the purchaser is entitled at his election to obtain his deed, either from the ex-sheriff who sold the property, or by order of the court from his successor in office. However, we shall not now determine this question.

X. In conclusion, we would say that collateral attacks upon judicial proceedings are never favored; and when such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void, but will be held to be valid. Irregularities alone are not sufficient to destroy the validity of judicial proceedings; nor are mere omissions from the record. On the contrary, it will generally be presumed, in the absence of anything to the contrary, that all that was necessary to be done with respect to any particu-

lar matter, by either the court or its officers, was not only done, but rightly done. (*Paine v. Spratley*, 5 Kas. 525; *Bowman v. Cockrill*, 6 id. 311, 324; *Armstrong v. Grant*, 7 id. 285, 291, 292; *Burke v. Wheat*, 22 id. 722; *Pracht v. Pister*, 30 id. 568, 573; *Pritchard v. Madren*, 31 id. 38, 50, 51; *Rounsaville v. Hazen*, 33 id. 71, 76; *Merwin v. Hawker*, 31 id. 222; *Cross v. Knox*, 32 id. 725, 732, 733; *Stetson v. Freeman*, 35 id. 523, 532; and other cases hereafter cited.)

With respect to petitions or first pleadings, see the following cases: *Greer v. Adams*, 6 Kas. 203; *Entreken v. Howard*, 16 id. 551; *Bryan v. Bauder*, 23 id. 95; *Rowe v. Palmer*, 29 id. 337, 340.

With regard to service by publication, and all the proceedings based thereon, we would refer to the following cases: *Gregg v. Thompson*, 17 Iowa, 107; *Gemmell v. Rice*, 13 Minn. 400; *Paine v. Mooreland*, 15 Ohio, 435; *Gary v. May*, 16 id. 66; *Nash v. Church*, 10 Wis. 303, 312, 313; *Quarl v. Abbett*, 102 Ind. 233, 240; *Lawler v. White*, 27 Tex. 250; *Loring v. Binney*, 38 Hun, 152; *Voorhees v. U. S. Bank*, 10 Pet. 449; *Cooper v. Reynolds*, 10 Wall. 308; *Ludlow v. Ramsey*, 11 id. 581.

With reference to attachments, and all the proceedings based thereon, we would refer to the following cases. The last three cases above cited, and the following: *Ritter v. Scannel*, 11 Cal. 238, 247; *Porter v. Pico*, 55 id. 165, 172; *Harvey v. Foster*, 64 id. 296; *Scrivener v. Dietz*, 68 id. 1; same case, 8 Pac. Rep. 609; *O'Farrell v. Stockman*, 19 Ohio St. 296; *Rowan v. Lamb*, 4 G. Greene, 468; *Redus v. Wofford*, 12 Miss. (4 Smedes & M.) 597.

We think no material error was committed in this case, and therefore the judgment of the court below will be affirmed.

HORTON, C. J.: Concurring.

JOHNSTON, J.: Not sitting, having been of counsel in the court below.