CHARLES WILKINS *et al.* v. GEORGE W. TOURTELLOTT *et al.*

1. CASE, *Followed. Wilkins v. Tourtellott*, 28 Kas. 825, and *Wilkins v. Tourtellott*, 29 id. 513, followed.

2. JUDICIAL PROCEEDINGS — *Collateral Attacks — Presumption.* Collateral attacks upon judicial proceedings are never favored. Irregularities alone are not sufficient to destroy the validity of judicial proceedings, nor are mere omissions from the records sufficient to destroy such proceedings. It will generally be presumed, in the absence of anything to the contrary, that all that was necessary to be done with respect to any particular matter by the officer of a court was not only done, but rightly done. (*Head v. Daniels*, 38 Kas. 1.)

3. ATTACHMENT — *Service of Order — Presumption.* Where the return of an order of attachment shows that the officer attached certain real estate, and that when he attached the same he in fact took possession thereof and left a true copy of the order of attachment, but does not state in so many words that he left a copy of the order with the occupant, or, if there were no occupant, in a conspicuous place on the real estate, it will be presumed that the officer did his duty when he attached the property, and therefore that the service of the order of attachment by him was properly and legally made.

## *Error from Shawnee District Court.*

THIS case was commenced by *George W. Tourtellott* and *George P. Allcutt,* October 23, 1879, in the district court of Wyandotte county, against *Charles Wilkins, Nicholas McAlpine, James M. Mason, et al.,* to recover a tract of land in Kansas City, in Wyandotte county, 289 feet long by 120 feet wide, excepting two small parcels thereof, specially mentioned in the petition. The amended petition upon which the cause was tried, is as follows:

"That at the time of the filing of the original petition herein and the commencement of this action, plaintiffs had and ever since had had and now have a legal estate in, and were then and have since and now are entitled to the possession of the following-described real estate and property situated in Wyandotte county, Kansas, thus bounded, to wit: Beginning at a point six hundred and forty feet two inches south, sixty-one degrees and thirty minutes west from another point thirty-four hundred and eighty-four and one-half feet north, twenty-eight degrees and thirty minutes west from the southeast corner of section eleven, township eleven, range twenty-five in said Wyandotte county, and running thence from said beginning point south sixty-one degrees and thirty minutes, west two hundred and eighty-nine feet; thence south twenty-eight degrees and thirty minutes, east one hundred and eighty feet; thence north sixty-one degrees and thirty minutes, east two hundred and eighty-nine feet; thence north twenty-eight degrees and thirty minutes, west one hundred and eighty feet to the place of beginning; except a part thereof described as follows, to wit: About twenty-five by fifty-four feet on the east side of Wood street, being all that is fenced in and occupied by Frank Rodie; and also excepting that part of said premises described as follows, to wit: A piece of land fifty feet square

12—42 KAS.

in the southwesternly corner thereof, occupied by Anton Hoenf at the commencement of this action.

"That defendants at the filing of the original petition and the commencement of this action unlawfully kept, and are ever since keeping unlawfully, and still unlawfully keep plaintiffs out of the possession of said premises and real property, in which plaintiffs had and still have a legal estate as aforesaid.

"Plaintiffs therefore pray judgment against said defendants for the recovery of said real property, and for costs of suit."

The defendants, excepting Annie Mason, filed the following answer:

"Defendants for answer admit that they are in possession of the premises described in the plaintiffs' petition, and aver that they are lawfully entitled to the possession thereof; and deny each and every other allegation in said petition contained."

And Annie Mason for her separate answer alleged:

"1. That she is not in possession of said premises mentioned in said plaintiffs' petition under any claim in her own right, but only as a member of the family of the said defendant James M. Mason, and under his direction and control, without any voluntary act of her own; that in her own right she sets up no right, claim, or title, or demand to the said premises, save and except that which behooves her and is proper as the wife of the said James M. Mason, specially disclaiming any other right, title or interest therein; that whenever the court renders a decree against the said J. M. Mason, or a judgment herein for possession of said premises, and he departs therefrom, so she will do likewise.

"2. That except as above, said defendant Annie Mason says that she denies each and every allegation in said petition contained.

"3. Said defendant further says that she denies that she is a proper party to this suit.

"4. Said defendant denies that she is a necessary party thereto, and prays the court that the said action be dismissed as to her, and she recover her costs in this behalf expended of and from the said plaintiffs."

On April 22, 1880, the defendants filed the following supplemental answer:

"1. That on the 11th day of March, 1880, the defendant

N. McAlpine, under whom all the above defendants derive such title and possession as they have, and under whom all said other defendants claim, purchased all the right, title and interest of Jennie M. James, Lewellen E. James, Solomon James, Virginia James, and Annie James, sole heirs and legal representatives of David E. James, deceased, in and to the property in controversy herein, which said purchase was witnessed by a deed of conveyance made by the said parties named James unto said N. McAlpine on the date above named; that said deed of conveyance was made after this suit was commenced, and was duly recorded on the date above named in the office of the register of deeds, in Wyandotte county, Kansas; that by reason of the premises, the said defendant N. McAlpine and the defendants under him according to their rights became vested with all the right, title and interest of said parties named James, whatever the same may be.

"2. Defendants say that on the 29th day of July, 1879, they purchased of J. C. Douglass as attorney in fact for C. I. Richards, the holder and owner of a tax title upon the lands in controversy herein, all the right, title and interest of said Richards and his wife H. S. Richards in and to the lands in controversy herein, and obtained from said Richards and his wife H. S. Richards a deed of conveyance for said lands, dated as aforesaid, which said conveyance contained the name of said N. McAlpine as grantee, and was duly executed, acknowledged, and delivered to said McAlpine; by reason whereof all the right, title and interest of said Charles I. Richards in and to the lands in controversy herein passed to the defendant N. McAlpine, and the other defendants herein according to their rights. And defendants hereby give notice on the record, that said conveyance will be used in evidence on the trial of this case, and the defendants will urge the titles acquired thereunder in defense of this suit."

Subsequently the plaintiffs filed the following reply:

"For reply to the further and supplemental answer of defendants filed herein April 22, 1880, said plaintiffs deny each and every allegation thereof, and also deny that said Jennie M. James, Lewellen E. James, Solomon James, Virginia James, C. I. Richards and wife, have ever had, and also that any or either of them have ever had, any right, title, interest or estate to or in the lands sued for.

"Plaintiffs therefore pray judgment as prayed for in their petition."

At the December term of the district court of Wyandotte county of 1881 the case was tried by the court without a jury, and judgment was rendered in favor of the plaintiffs for a recovery of the land sued for. The case was taken upon error to the supreme court, and the judgment reversed. (28 Kas. 825; 29 id. 513.) Subsequently the cause was taken on change of venue to the district court of Shawnee county, and there tried in June, 1886, by the court, a jury being waived. On January 11, 1887, that court rendered judgment in favor of the plaintiffs, and filed the following special findings of fact and of law:

"1. In 1860 David E. James was the owner of the undivided three-eighths interest in a portion of what is known as Armstrong's reserve No.1; and on March 5, 1860, James executed to James Gladden a title bond for an undivided ten acres of this land, and described the premises as the west half of the southwest quarter of section eleven, and the east half of the southeast quarter of section ten, in township eleven, and being in the fork of the Kansas and Missouri rivers, in Wyandotte county.

"2. On the same day said James Gladden in writing assigned and transferred this bond for a deed to one Henry R. Seegar, for the nominal consideration of $1,000, but in fact without any consideration; and which assignment made by the said Gladden to the said Seegar was duly executed, acknowledged and proved by the said Gladden on March 6, 1860, and recorded in the proper register of deeds office of Wyandotte county, October 1, 1860; a copy of which bond and assignment is as follows:

"'Know all men by these presents, that I, David E. James, of the county of Wyandotte and territory of Kansas, do hereby bind myself, my heirs and assigns, to convey unto James Gladden, his heirs and assigns, by a good and valid deed, one undivided ten acres of the west half of the southwest quarter of section No. 11, and of the east half of the southeast quarter of No. 10, in township No. 11, being in the forks of the Kansas and Missouri rivers, in the county of Wyandotte, K. T., and all consisting of one undivided ten acres.

"'It is hereby covenanted and agreed that the aforesaid conveyance shall be made at any time within one year from the date of this instrument. It is also agreed and understood that said conveyance is to be made subject to and in accordance with the terms and conditions of a certain mortgage given upon said real estate by said James to one Silas Armstrong, and which is recorded in the proper office of the county of Wyandotte, K. T.

"'In witness whereof, I have hereunto set my hand and seal, this 5th day of March, 1860.          DAVID E. JAMES. [L. S.]

"'Know all men by these presents, that the within-named James Gladden, in consideration of one thousand dollars to me in hand paid by Henry R. Seegar, the receipt of which I do hereby acknowledge, have bargained, sold, assigned and set over all my right, title, interest, claim, property and demand whatsoever in and to the within bond unto the said Henry R. Seegar and his assigns forever.

"'In witness whereof, I have hereunto set my hand and seal, this 5th day of March, 1860.

His<br>
JAMES x GLADDEN. [L. S.]<br>
mark.

"'In the presence of Louis B. Scott, Joseph E. Snyder.'

"STATE OF MISSOURI, COUNTY OF JACKSON, *ss.:* Be it remembered, that on this 6th day of March, 1860, before me, John S. Hough, clerk of Kansas City court of common pleas for Kaw township, in the county and state aforesaid, personally appeared James Gladden, who is well known to me as the person whose name is subscribed to the foregoing instrument of writing, and acknowledged the same to be his voluntary act and deed for the uses and purposes therein mentioned.

"'In testimony whereof, I have hereunto set my hand, and affixed the seal of said court, at my office in the City of Kansas, on the day and date above written.

JOHN S. HOUGH, *Clerk.*<br>
[L. S.] By LOUIS B. SCOTT, *D. C.*

"'Recorded October 1, 1860, at 5 P.M.

V. J. LANE, *Register of Deeds.*<br>
By JAMES A. CRUISE, *D. R.*'

"3. On July 27, 1864, said David E. James executed and delivered to said Snyder an alleged blank deed, so called, in which the name of the grantee and description of any property were omitted, and authorized said Snyder to fill it up at such time as he might desire with six acres on the bank of the Missouri river somewhere between the state line and the mouth of the Kansas river.

"4. On January 23, 1867, Thomas Ewing jr. and others commenced an action in the district court of Wyandotte county against William Weer, Thomas H. Swope, David E. James, and others, defendants, among which was the said Henry R. Seegar, for the purpose of obtaining a decree of partition of these premises, thus described in the petition in said action: 'All that parcel of land lying in the fork of the Missouri and Kansas rivers and between the Missouri state line and the Kansas river as lies north of Turkey creek, containing about two hundred and sixty acres more or less;' and in this petition it was alleged that Henry R. Seegar and the other defendants were joint owners of certain of these premises, but in what particular part and proportion they severally owned and were seized was to the plaintiff then unknown.

"5. Afterward, such proceedings were had in said action for partition in said court that there was assigned, allotted and decreed to David E. James a tract of forty-three and one-half acres of said premises.

"6. In 1868, while James was absent from this state, the said Joseph E. Snyder filled up the deed referred to in conclusion of fact number three by inserting his own name as grantee, and with a description of land by metes and bounds of six acres on the bank of the Missouri river, and filed the deed thus apparently complete for record in the office of the register of deeds for Wyandotte county, which alleged deed is in words and figures following:

"'This indenture, made this 27th day of July, in the year of our Lord one thousand eight hundred and sixty-four, between David E. James and Jennie M. James his wife, of the first part, and Joseph E. Snyder of the second part, witnesseth: That the said parties of the first part, for and in consideration of the sum of one dollar to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold, remised, released, aliened and confirmed, and by these presents do grant, bargain, sell, remise, release, alien and confirm, unto the said party of the second part, his heirs and assigns forever, commencing at a point north 28½ degrees, west 3,604½ feet, from the southeast corner of section 11, township 11, range 25, in the county of Wyandotte, state of Kansas; thence south 61½ degrees, west 640 feet 2 inches; thence south 28½ degrees, east 300 feet; thence north 61½ degrees, east 871 feet and 2 inches; thence along the southwest bank of the Missouri river northward 28½ degrees, west 300 feet; thence south 61¼ degrees, west 231 feet to the place of beginning, containing six acres: together with all and singular the hereditaments and appurtenances thereto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest and demand whatsoever of the said parties of the first part, either in law or in equity, of, in and to the above-bargained premises, with the hereditaments and appurtenances:

"'To have and to hold the same premises as above described, with the appurtenances, unto the said party of the second part, and to his heirs and assigns forever.

"'In witness whereof, the parties of the first part have hereunto set hands and seals, the day and year first above written.

D. E. JAMES.          [L. S.]<br>
JENNIE M. JAMES.    [L. S.]

"'Sealed and delivered in the presence of F. L. Parker, Tracy W. Root.'

"'STATE OF MICHIGAN, WASHTENAW COUNTY, ss.: On this 2d of August, 1864, before me, the subscribed, clerk of the circuit court of Washtenaw county aforesaid, personally appeared David E. James and Jennie M. James, to me personally known to be the identical persons described in and who executed the within conveyance, and acknowledged the instrument to be their own voluntary act and deed. And the said Jennie M. James on an examination apart from her said husband, having been first made acquainted with the contents of such conveyance, acknowledged that she executed the same and relinquished her dower in the real estate therein mentioned freely, and without any fear or compulsion of her said husband.          [Seal.]          TRACY W. ROOT, Clerk.

"'Recorded October 23, 1868, at 9 A. M.

JAMES A. CRUISE, Register of Deeds.'

"7. On the 12th day of April, 1869, Snyder conveyed this

property back to James, a copy of which deed, with the certificate of acknowledgment and record in the office of the register of deeds, is as follows:

"'[U.S. revenue stamp, 50 cents.]

"'This indenture, made this 12th day of April, in the year of our Lord one thousand eight hundred and sixty-nine, between Joseph E. Snyder and Teressa Snyder his wife, of the first part, and David E. James, party of the second part, witnesseth, that said parties of the first part, in consideration of the sum of one dollar to them duly paid, do by these presents grant and convey to said party of the second part, his heirs and assigns, all that tract or parcel of land situate in the county of Wyandotte and state of Kansas, and described as follows, to wit: Commencing at a point north 28½ degrees, west 3,604½ feet, from the southeast corner of section 11, township 11, range 25, in the county of Wyandotte and state of Kansas; thence south 61½ degrees, west 640 feet 2 inches; thence south 28½ degrees, east 300 feet; thence north 61½ degrees, east 871 feet 2 inches; thence along the southwest bank of the Missouri river north 28½ degrees, west 300 feet; thence south 61½ degrees, west 231 feet to the place of beginning, containing six acres, with the appurtenances, and all the estate, title and interest of the said parties of the first part therein.

"'And the said Joseph E. Snyder and Teressa his wife do hereby covenant and agree that at the delivery hereof they are the lawful owners of the premises above granted, and seized of a good and indefeasible estate of inheritance therein, and that they will warrant and defend the same in the quiet and peaceable possession of said parties of the second part, their heirs and assigns forever.

"'In witness whereof, the said parties of the first part hereunto set their hands and seals, the day and year above written.

JOSEPH E. SNYDER. [Seal.]<br>TERESSA SNYDER. [Seal.]

"'Executed and delivered in the presence of C. Mohr.'

"'STATE OF MISSOURI, COUNTY OF JACKSON, ss.: On the 14th day of April, 1869, before me, clerk of the Kansas City court of common pleas in and for said county, came Joseph E. Snyder and Teressa Snyder his wife, who are personally known to be the same persons who executed the foregoing instrument, and duly acknowledged the execution of the same.

"'In testimony whereof, I have hereunto subscribed my name and affixed my official seal, the day and year last above written.

C. H. VINCENT, <i>Clerk.</i> [Seal.]

"'Recorded July 1, 1869, at 9 A. M.

JAMES A. CRUISE, <i>Register of Deeds.</i>'

"8. On the 13th day of April, 1869, the said David E. James and wife executed, made, acknowledged, and delivered to Joseph E. Snyder the following deed, which was recorded in the office of the register of deeds at the time hereinafter mentioned, to wit:

"'[U.S. revenue stamp, 50 cents.]

"'This indenture, made this 13th day of April, in the year of our Lord one thousand eight hundred and sixty-nine, between David E. James and Jennie M. James his wife, of the first part, and Joseph E. Snyder, party of the second part, witnesseth: That the said parties of the first part, in consideration of the sum of one dollar to them paid, have sold, and by these presents do grant and convey to the said party of

the second part, his heirs and assigns, all that tract or parcel of land situate in the county of Wyandotte and state of Kansas, and described as follows, to wit: (Var. 11 degrees east), beginning at the S.W. corner of a tract of land conveyed by said James to one James F. Joy, and now known as railroad land, said S.W. corner being the N.W. corner of a certain parcel of land now owned by said James, thence running south 61 degrees 50 min., west $580\frac{8}{10}$ feet; thence south 28 degrees 10 min., east 300 feet; thence north 61 degrees 50 min., east $580\frac{8}{10}$ feet, and thence north 28 degrees and 10 min., west 300 feet to the place of beginning, and all to contain four acres; the said land being in township 11, range 25, in the above-mentioned county and state.

"'This conveyance is made subject to the claim of a mortgage of fifty dollars per acre given to Silas Armstrong by said James; also subject to the claim of one hundred and twenty-five dollars due to C. F. Welland, due on or before May 12, 1869, with interest at the rate of ten per cent. per annum; also taxes due now upon said above-described land, amounting to $17.50, more or less, with the appurtenances, and all the estate and title and interest of the first party therein; and the said David E. James and Jennie M. James his wife do hereby covenant and agree that at the delivery hereof they are the lawful owners of the premises above granted, and seized of a good and indefeasible estate of inheritance therein; and that they will warrant and defend the same in the quiet and peaceable possession of said party of the second part, his heirs and assigns forever.

"'In witness whereof, said parties of the first part have hereunto set their hands and seals, the day and year above written.          [Seal.]
                                                        D. E. JAMES.      [Seal.]
                                                        JENNIE M. JAMES.  [Seal.]

"'Executed and delivered in the presence of George B. Wood, E. B. Bond, and G. R. Porter for Mrs. James.'

"'STATE OF KANSAS, COUNTY OF WYANDOTTE, ss.: On the 13th day of April, 1869, before me, a notary public within and for said county, came David E. James, to me personally known to be the same person who executed the foregoing instrument, and acknowledged duly the execution of the same.

"'In testimony hereof, the day and year last above written, I have hereunto subscribed my name and affixed my official seal. All interlineations made before signing.
                              M. B. NEWMAN, Notary Public.      [Seal.]'

"'STATE OF MICHIGAN, COUNTY OF WASHTENAW, ss.: On this 17th day of April, 1869, before me, the county clerk in and for said county, came Jennie M. James, to me personally known to be the same person who executed the foregoing instrument, and duly acknowledged the execution of the same.

"'In witness whereof, I have hereunto subscribed my name and affixed my official seal, the day and year last above written. All interlineations made before signing.      JOHN J. ROBISON, Clerk.   [Seal.]'
[U. S. revenue stamp, 5 cents.]

"9. On December 2, 1867, the said Joseph E. Snyder filed in the United States district court for the western district of Missouri his voluntary petition in bankruptcy, and in his schedule of property filed therewith Snyder set forth that he possessed no other property than his tools and implements of trade, and certain exempt articles of household furniture.

"10. Said Snyder was on said 2d day of December, 1867,

when he filed his voluntary petition in bankruptcy, the holder and owner of the title-bond described in the conclusion of fact number one, and did not disclose said bond or blank; concealed the said paper from his said assignee and his creditors, and all knowledge of his interest in said land, if any he had, and procured from said district court of the United States for the western district of Missouri his discharge in 1868 without scheduling said real estate.

"11. After the said Snyder had procured his discharge in bankruptcy from said court, the creditors of said Snyder began proceedings in said court to set aside the discharge of Snyder on the ground that he had fraudulently concealed from said court, his assignee and creditors, the assets belonging to his estate, and of which said proceedings and application to set aside his discharge in bankruptcy the said Snyder was duly notified, and appeared in said court to and answered to said proceedings; it was alleged by said creditors in said proceedings that the following lands and tenements belonged to the estate in bankruptcy of Snyder, viz.: Beginning at a point north $28\frac{1}{2}$ degrees, west distance $3,604\frac{1}{2}$ feet from the southeast corner of section 11, township 11 south, range 25, east of the sixth principal meridian, in the state of Kansas, on the northwardly line of James street extended as shown by the plat of Kansas City, Kansas, now on file in the office of the register of deeds in Wyandotte county, Kansas, on page 9 of the book of plats, filed on the 3d day of May, 1869, by D. E. James and others; thence south $61\frac{1}{2}$ degrees, west 640 feet 2 inches; thence south $28\frac{1}{2}$ degrees, east 300 feet; thence north $61\frac{1}{2}$ degrees, east 640 feet 2 inches, to the said northwardly line of said James street extended; thence north $28\frac{1}{2}$ degrees, west, on said northwardly line of James street, 300 feet, to the beginning, containing four acres, more or less; and also a piece of land described as follows: Beginning at the same point as above described, thence north $61\frac{1}{2}$ degrees, east to the Missouri river; thence down along said river, south $28\frac{1}{2}$ degrees, east 300 feet; thence south $61\frac{1}{2}$ degrees, west 231 feet, to the northwardly line of said James street extended; thence north $28\frac{1}{2}$ degrees, west to the beginning, containing two acres, more or less.

"12. Afterward, by the consideration of the district court of the United States for the western district of Missouri, on the hearing of said proceedings it was ordered and decreed that the discharge in bankruptcy of the said Snyder be and the same was set aside by said court; and it was further ordered

by said court that the assignee in said court file a complete schedule of all the property belonging to the estate of said bankrupt Snyder remaining yet undisposed of.

"13. Afterward, on August 19th, 1871, the said assignee in bankruptcy filed a schedule of property belonging to the estate of said bankrupt, and which schedule described the following property only, viz.:

"'No personal property found. The said bankrupt owns the following described real estate situated in Kansas City, Wyandotte county, Kansas, and bounded as follows: Beginning at a point north 28½ degrees, west distant 3,604½ feet from the southeast corner of section eleven, township eleven south, range twenty-five, east of the sixth principal meridian, in the state of Kansas, on the northwardly line of James street extended, as shown by the plat of Kansas City, Kansas, now on file in the office of the register of deeds office in Wyandotte county, Kansas, on page 9 of the book of plats, filed on the 3d day of May, 1869, by D. E. James *et al.;* thence south 61½ degrees, west 640 feet 2 inches; thence south 28½ degrees, east 300 feet; thence north 61½ degrees, east 640 feet 2 inches to the said northwardly line of James street extended; thence north 28½ degrees, west on said northwardly line of James street 300 feet to the beginning, containing four acres, more or less. And also a piece of land described as follows: Beginning at the same point above described; thence north 61½ degrees, east to the Missouri river; thence down along the said river, south 28½ degrees, east 300 feet; thence south 61½ degrees, west 231 feet to the northwardly line of said James street extended; thence north 28½ degrees, west 300 feet to the beginning, containing two acres, more or less.'

"14. On August 24, 1871, the court made an order directing the assignee in bankruptcy to appraise said premises according to law and sell the same at public or private sale, as he might desire, for the best interest of the creditors.

"15. Afterward, on October 12, 1871, the said assignee in bankruptcy reported to said court in writing that he had sold said premises to B. Judd for the sum of $5,120.

"16. Afterward, on the 14th day of October, 1871, the said court, having been fully advised in the premises, approved and confirmed said sale, and made an order directing the said assignee in bankruptcy to make and deliver to said purchaser a deed of conveyance for said premises.

"17. Afterward, on the 20th day of October, 1871, assignee in bankruptcy made and delivered to said Byron Judd a deed of conveyance for said premises, in obedience to the said order of the said district court of the United States for the western district of the state of Missouri; and that said deed contained the following-described premises, viz.: Beginning at a point north 28½ degrees, west 3,604½ feet, from the southeast corner of section 11, township 11 south, of range 25, east of the sixth principal meridian, on the northwest-

wardly line of James street extended as shown by the plat of Kansas City, Kansas, on file in the register of deeds' office of said county of Wyandotte, page 9 of the book of plats, filed on the 3d day of May, 1869, by David E. James and others; thence south $61\frac{1}{2}$ degrees, west 640 feet 2 inches; thence south $28\frac{1}{2}$ degrees, east 300 feet; thence north $61\frac{1}{2}$ degrees, east 640 feet 2 inches, to the said northwestwardly line of said James street extended; thence north $28\frac{1}{2}$ degrees, west, on said northwestwardly line of James street extended, 300 feet, to the beginning, containing four acres, more or less; also, beginning at the same point as last above, and thence north $61\frac{1}{2}$ degrees, east to the Missouri river; thence down along said river, south $28\frac{1}{2}$ degrees, east 300 feet; thence south $61\frac{1}{2}$ degrees, west 231 feet, to the northwardly line of said James street extended; thence north $28\frac{1}{2}$ degrees, west 300 feet, to the beginning, containing two acres, more or less. And the said deed was duly executed, acknowledged, certified, delivered and recorded on the 27th day of October, 1871, in the office of said register of deeds, in Wyandotte county, Kansas, in the book Q, pages 189, 190, and 191.

"18. The defendant Nicholas McAlpine and the other defendants herein claim under the said Byron Judd by a regular chain of conveyance through said Byron Judd and his assignees and grantees, succeeding the said bankrupt title, which is a matter of record in the register of deeds' office of Wyandotte county.

"19. Said parties, the defendants, have been in the actual possession of the land in controversy ever since the early spring of 1874, and held such possession and had a tenant living as actual occupant on the said four-acre tract of land above described, which is located on the westerly side of James street, from the early spring of 1874, and down to the time the said Nicholas McAlpine purchased the same in the year 1879, and said tenant was an actual occupant upon the said land at the time the attachment under which said plaintiffs claim title was issued and attempted to be levied upon the land in controversy.

"20. On May 16, 1874, Henry R. Seegar commenced an action by attachment against the said Joseph E. Snyder in the district court of Wyandotte county, for the purpose of recovering the sum of $481.50, with interest at the rate of 6 per cent. per annum from October 18, 1873, and there was issued by the clerk of said court and directed to the sheriff of said county the following order of attachment, and said

order of attachment was executed by said sheriff, as appears by said order of attachment and the return of said sheriff thereon and thereto attached, which order of attachment and return of said sheriff are as follows:

"'*In the District Court of the State of Kansas in and for the County of Wyandotte.*—HENRY R. SEEGAR, Plaintiff, v. JOSEPH E. SNYDER, Defendant.—The State of Kansas to the Sheriff of Wyandotte County, in said State, greeting: You are hereby commanded to attach and safely keep the lands, tenements, goods, chattels, rights, stocks, credits, moneys and effects of the defendant, Joseph E. Snyder, in your county, not exempt by law from being applied to the payment of the claim of the plaintiff, or so much thereof as will satisfy his claim for four hundred and eighty-one and 50-100 dollars, with interest at the rate of six per cent. per annum from the 18th day of October, 1873, and fifty dollars, the probable costs of this action. And of your proceedings hereunder make due return within ten days from the date hereof.

"'Witness my hand and the seal of said court, affixed at my office in the city of Wyandotte, this the 16th day of May, 1874.

G. W. BETTS, *Clerk.*        [Seal.]
Per J. W. REED, *D. C.*'

"'STATE OF KANSAS, COUNTY OF WYANDOTTE, *ss.:* Received this order of attachment on the 16th day of May, 1874, at — o'clock — M., and thereupon, to wit, on the 16th day of May, 1874, at my county, I attached as the property of the within-named Joseph E. Snyder, as described in the appraisement hereto attached and made a part of this return, by declaring on the premises that I attached said property at the suit of the within-named Henry R. Seegar, and by taking the same into my possession; and now hold the same subject to the order of the court. And with F. W. Drought and S. Bolmer, two householders of my county, who were by me on the same day first duly sworn to make a true inventory and appraisement of all the property so attached, I made a true inventory and appraisement of all the property so attached, and which said inventory and appraisement is signed by the said householders, by myself, and is returned with this order; and on the same day I left a true copy of this order.

E. S. W. DROUGHT, *Sheriff,*
By W. H. RYUS, *Deputy Sheriff.*'

"The appraisement thereto, in attachment, is as follows:

"'*In the District Court of the State of Kansas, in and for the County of Wyandotte.*—HENRY R. SEEGAR v. JOSEPH E. SNYDER.—We, the undersigned, W. H. Ryus, under-sheriff of said county of Wyandotte, with F. W. Drought and S. Bolmer, householders of said county, do hereby make a true inventory and appraisement of all the property attached by said sheriff, by virtue of the order of attachment in said cause issued, and now in his hands for execution, as follows, to wit:

*Lands and tenements in said county:* Beginning at a point 640 feet and 2 inches south, 61 degrees 30 min. west from another point 3,604½ feet north, 28 degrees 30 min. west from the southeast corner of section 11, township 11, of range 25, in Wyandotte county, Kansas, and running from said first-named point south 61 degrees 30 min., west along the northwest line of the land formerly belonging to David E. James 289 feet; thence south 28 degrees 30 min., east 100 feet; thence north 61 degrees 30 min., east 289 feet; thence north 28 degrees 30 min., west 100 feet to the beginning, at the sum of $433.33. Also, beginning at a point 640 feet 2 inches south, 61 degrees 30 min. west, from another point 3,504½

feet north, 28 degrees 30 min. west from the southeast corner of section 11, in township 11, of range 25, in Wyandotte county, Kansas, and running from said beginning point south 61 degrees 30 min., west 289 feet; thence south 28 degrees 30 min., east 100 feet; thence north 61 degrees 30 min. east 289 feet; thence north 28 degrees 30 min., west 100 feet to the place of beginning, at the sum of $433.33. Also, beginning at a point 640 feet 2 inches south, 61 degrees 30 min. west from another point 3.404½ feet north, 28 degrees 30 min. west from the southeast corner of section 11, township 11, range 25, in Wyandotte county, Kansas, and running from said beginning point south 61 degrees 30 min., west 289 feet; thence south 28 degrees 30 min., east 100 feet; thence north 61 degrees 30 min., east 289 feet; thence north 28 degrees 30 min., west 100 feet to the place of beginning, at the sum of $433.33.

16th May, 1874.                          E. S. W. DROUGHT, *Sheriff.*
                                          By W. H. RYUS, *Deputy.*
                                          F. W. DROUGHT.
                                          S. BOLMER.'

"21. On the same day, to wit, May 16, 1874, C. F. Welland commenced an action by attachment against said Joseph E. Snyder, in the district court of Wyandotte county, for the purpose of recovering the sum of $250, with interest at the rate of ten per cent. per annum from the 8th day of February, 1869, and there was issued by the said clerk of said court, and directed to the sheriff of said county, the following order of attachment; and the said order of attachment was executed by said sheriff, as appears by said order of attachment and the return of said sheriff thereon, thereto attached, which order of attachment and return of said sheriff are as follows:

"'*In the District Court of the State of Kansas, in and for the County of Wyandotte.*— C. F. WELLAND, Plaintiff, *v.* JOSEPH E. SNYDER, Defendant. — The State of Kansas, to the Sheriff of Wyandotte County, in said State, greeting: You are hereby commanded to attach and safely keep the lands, tenements, goods, chattels, stocks, rights, credits, moneys and effects of the defendant, Joseph E. Snyder, in your county, not exempt by law from being applied to the payment of the claim of the plaintiff, or so much thereof as will satisfy his claim for two hundred and fifty dollars, with interest at the rate of ten per cent. per annum from the 8th day of February, 1869, and fifty dollars, the probable costs of this action; and of your proceedings hereunder make due return within ten days from the date hereof.

"' Witness my hand and the seal of said court, affixed at my office in the city of Wyandotte, this 16th day of May, 1874.

G. W. BETTS, *Clerk.* [Seal.]
Per J. W. REED, *D. C.*

"'Appearance Docket D, No. 1735. District Court Wyandotte county. —Attachment.   C. F. Welland *v.* Joseph E. Snyder.

BRUMBACK & TRABER, *Attorneys.*

"' Filed May 25, 1874.— G. W. BETTS, *Clerk.*'

"'STATE OF KANSAS, COUNTY OF WYANDOTTE, *ss.:* Received this order of attachment on the 16th day of May, 1874, at — o'clock — M., and thereupon, to wit, on the 16th day of May, 1874, at my county, I attached as the property of the within-named defendant, Joseph E. Snyder, as described in the appraisement hereto attached and made a part of this

return, by declaring on the premises that I attached said property at the suit of the within-named C. F. Welland, subject to the attachment on the same day made in favor of Henry R. Seegar, issued from the 10th district court, Wyandotte county, Kansas, by taking the same into my possession, and now hold the same subject to the order of the court; and with F. W. Drought and S. Bolmer, two disinterested householders of my county, who were by me first on the same day duly sworn to make a true inventory and appraisement of all the property so attached, I made a true inventory and appraisement of all the property so attached, and which said inventory and appraisement is signed by the said householders and by myself, and is returned with this order; and on the same day I left a true copy of this order.

E. S. W. Drought, <i>Sheriff.</i>
By W. H. Ryus, <i>Deputy Sheriff.'</i>

" '<i>In the District Court in and for the State of Kansas, and Wyandotte County.</i>— C. F. Welland <i>v.</i> Joseph E. Snyder.—We, the undersigned, W. H. Ryus, under-sheriff of the said county of Wyandotte, with F. W. Drought and S. Bolmer, householders of said county, do hereby make a true inventory and appraisement of all the property attached by the said sheriff by virtue of the order of attachment in said cause issued and now in his hands for execution as follows, to wit: Lands and tenements in said county: Beginning at a point 640 feet 2 inches south, 61 degrees 30 min. west, from another point 3,604½ feet north, 28 degrees 30 min. west from the southeast corner of section 11, in township 11, of range 25, in Wyandotte county, Kansas, and running from said first-named point south 61 degrees 30 min. west, along the northwest line of the land formerly belonging to David E. James, 289 feet; thence south 28 degrees 30 min., east 100 feet; thence north 61 degrees 30 min., east 289 feet; thence north 28 degrees 30 min., west 100 feet to beginning, at the sum of $433.33. Also, beginning at a point 640 feet 2 inches south, 61 degrees 30 min. west from another point 3,504½ feet north, 28 degrees 30 min. west from the southeast corner of section 11, township 11, range 25, in Wyandotte county, Kansas, and running from said beginning point south 61 degrees 30 min., west 289 feet; thence south 28 degrees 30 min., east 100 feet; thence north 61 degrees 30 min., east 289 feet; thence north 28 degrees 30 min., west 100 feet to the place of beginning, at the sum of $433.33. Also, beginning at a point 640 feet 2 inches south, 61 degrees 30 min. west of another point 3,404½ feet north, 28 degrees 30 min. west from the southeast corner of section 11, township 11, range 25, in Wyandotte county, Kansas, and running from the said beginning point south, 61 degrees 30 min., west 289 feet; thence south 28 degrees 30 min., east 100 feet; thence north 61 degrees 30 min., east 289 feet; thence north 28 degrees 30 min., west 100 feet to the place of beginning, at the sum of $433.33.

E. S. W. Drought, <i>Sheriff.</i>
By W. H. Ryus, <i>Deputy.</i>
F. W. Drought.
S. Bolmer.'

"22. Snyder was divested of his title to said land by the judicial sale upon the judgments obtained against him by said C. F. Welland and Henry R. Seegar in the district court of Wyandotte county.

"23. At the time of the commencement of the actions on which the above-named judgments were obtained, the defendant, Joseph E. Snyder, was a non-resident of the state of

Kansas, and jurisdiction was obtained in said actions by said proceedings in attachment thereon, against the lands in controversy in this action.

"24. Said attachment orders, returns and proceedings were sufficient to vest the court with jurisdiction in said actions.

"25. The plaintiffs herein hold by regular legal conveyance and title acquired by purchase at said sale under said attachment proceedings.

"26. The tax deeds to C. I. Richards and J. C. Douglass, and the conveyances from them to defendants, vest no title in the land in dispute to Nicholas McAlpine.

"27. The deed from the widow and children of David E. James to the defendant McAlpine conveyed no title, because the said James in his lifetime, together with his wife, had conveyed by warranty deed to Joseph E. Snyder, under whom the plaintiffs claim.

"28. In the fall of 1868 the owners of the land in said fractional sections 10 and 11, to prevent the washing away of the lands adjoining the Missouri river by the current thereof, entered into an agreement with James F. Joy, representing the Hannibal & St. Jo. Railroad Company, to donate lands along the river bank in consideration that said company would rip-rap the bank of said river with rock to preserve the lands, and accordingly David E. James and others of the owners deposited deeds in escrow to be delivered to said James F. Joy on the completion of said rip-rapping, and the said railroad company entered upon the prosecution of the work.

"29. After the arrangement with Joy and company, and after Snyder had obtained his discharge in bankruptcy, the said Snyder, while the said James was absent from the state and was in the state of Michigan, filled in the blank deed or instrument mentioned in finding No. 3, a description of the premises therein described, and also inserted his own name as grantee, as hereinbefore stated in conclusion of fact No. 6.

"30. Afterward said David E. James, on his return from the state of Michigan, learning that the said Joseph E. Snyder had filled in said deed his own name as grantee, and the description of the land described in said deed in conclusion of fact No. 6, expressed his dissatisfaction with the description of the property, and by mutual agreement between said David E. James and Joseph E. Snyder, said Snyder and wife made and executed the deed dated April 12 and acknowledged April 14, 1869, referred to and set forth in the conclusion of fact

No. 7, in exchange for the lands described in the deed mentioned in finding of fact No. 8.

"31. Said James F. Joy, or the railroad company for which he was acting, complied with and carried out the agreement for rip-rapping the bank of Missouri river, referred to in conclusion of fact No. 28, and received deeds for the lands along the bank of said river from the owners of the lands in said fractional sections Nos. 10 and 11 aforesaid."

And the court found the following conclusions of law:

"1. The title bond made by David E. James to James Gladden, and by him assigned to Henry R. Seegar and held by the said Joseph E. Snyder, did not vest in the said Snyder any title, legal or equitable, in the premises described in the plaintiffs' petition.

"2. The deed described in conclusion of fact No. 3 did not vest in the said Snyder any title, legal or equitable, in the premises described in the plaintiffs' petition.

"3. On December 2, 1867, when the said Snyder filed his petition in bankruptcy in the district court of the United States for the district of Missouri, he was not the owner of the legal or equitable title, or any estate in the premises described in the plaintiffs' petition.

"4. On April 13, 1869, after the said Snyder had been adjudged a bankrupt in the court of competent jurisdiction aforesaid, Snyder acquired the legal and equitable title to the premises described in the plaintiffs' petition from the said David E. James, by virtue of the deed of conveyance described in conclusion of fact No. 8, and the said premises were no part of the estate of the said Snyder at the time he was adjudged a bankrupt, and therefore the district court of the United States for the district of Missouri, sitting as a court of bankruptcy, had no jurisdiction to sell or dispose of the said premises to Byron Judd, and the sale of said premises described in the deed of conveyance, made by the assignee in bankruptcy to Judd, conveyed no title, legal or equitable, to said Judd or to those holding under him.

"5. By virtue of the force of the two orders of attachment issued by the clerk of the district court of Wyandotte county, on the 14th day of May, 1874, in the action then commenced in said court by Henry R. Seegar against the said Joseph E. Snyder, and the action of C. F. Welland against the said Snyder, and the return of the sheriff of Wyandotte

county of his official acts under said two writs of attachment, the said court acquired and had jurisdiction of the real estate described in the plaintiffs' petition and vested said title to said premises in the purchaser at the sheriff's sale, held and made in pursuance of the judgments of said court, and the plaintiffs herein hold by regular conveyance and title acquired from the purchaser at said sheriff's sale under said attachment proceedings.

"6. The plaintiffs are the owners of the legal and equitable title to the premises described in plaintiffs' petition, and are entitled to the possession of said premises, and the defendants unlawfully keep the plaintiffs out of the possession of said premises."

The defendants excepted to the findings of fact and of law, and also excepted to the judgment rendered, and bring the case here.

*James M. Mason*, and *John W. Day*, for plaintiffs in error.
*Jefferson Brumback*, and *C. W. Blair*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action to recover the possession of a small tract of land in Kansas City, Wyandotte county, brought by George W. Tourtellott *et al.* against Charles Wilkins *et al.* The action was commenced October 23, 1879. The case was originally tried before the district court of Wyandotte county, and special findings of fact and of law made, and judgment rendered in favor of the plaintiffs below. This judgment was reversed in this court at its January term, 1883. (28 Kas. 825; 29 id. 513.) The judgment was reversed solely upon the ground that the sheriff's returns on the orders of attachment were not signed by him. This court said:

"A return to be complete requires the signature of the officer, authenticating the statement of facts made in it. The mere fact that a paper is filed containing a recital of certain acts, which paper is unsigned by anyone, contains no evidence either that the acts so stated were in fact done, or if done, by whom they were done. Process in the nature of an order of

13 — 42 KAS.

attachment must not only be executed in a certain way, but also by a certain officer, and the signature of the officer is essential to show both what was done and by whom it was done. This return in no manner discloses by whom the acts stated in it were in fact done—whether by the sheriff, or the plaintiff's attorney, or an entire stranger to the court or the case. Now without the signature of an officer, is it evidence that anything was in fact done? Counsel argue that because the statutes of some states explicitly require that the return be signed by the officer, while ours does not, the failure to attach such signature is an immaterial omission. We cannot concur with this argument, because we think the signature is inherently an essential part of the return. . . .

"Nevertheless, the defect is one which is amendable. It is something which does not affect the fact of service, but simply the evidence of it. And generally amendments are permissible when they simply run to perfecting the proof of a service which was in fact made. But still the amendment is one which should be made. As the record stands, it fails to show service. We may not presume that service was in fact made; the record should show it. The return may be amended, but until amended we cannot presume that the facts were done and by the proper officer."

Subsequently, with the consent of the district court of Wyandotte county and upon due notice, the returns on the orders of attachment were amended with the signature of the officer executing the orders. The action was taken on a change of venue to the district court of Shawnee county, and tried by the court without a jury. That court made lengthy special findings of fact and of law, and rendered judgment in favor of the plaintiffs below — defendants in error. That court also handed down an elaborate written opinion. (4 Kas. L. J. 376–385.) In the opinion delivered in this court in this case at its July term, 1882, Mr. Justice BREWER, speaking for the court, said:

"As to the other defect, the failure to state in so many words that the officer left with the occupant, or if there were no occupant, in a conspicuous place on the real estate, a copy of the order, the case of *Sharp v. Baird*, 43 Cal. 577, is an authority directly in point, and holding the defect fatal. Notwithstanding this authority and the great ability of the court

by which it was pronounced, we are not prepared to yield full
assent to it. The return states that the officer took posses-
sion of the property. The code, § 226, declares that 'From
the time of the issuing of the order of attachment, the court
shall be deemed to have acquired jurisdiction, and to have
control of all subsequent proceedings under the attachment.'
Now if the attachment was properly issued, and the officer in
fact took possession of the property, we are inclined to think
that the failure to leave with the occupant, or on the place,
a copy of the order, is a mere irregularity, and not a fatal de-
fect. At any rate, if the officer did in fact so leave the order,
the return may be so amended as to state the fact, and thus
all question removed as to the regularity of the service." (28
Kas. 835.)

At the January term of this court for 1883, when this case
was again considered, Mr. Justice BREWER further said:

"The argument of counsel has caused us to doubt whether
we were well advised in expressing in the opinion, as we did,
dissent from the case of *Sharp v. Baird,* 43 Cal. 577; and
therefore we desire to withdraw such expression of dissent.
We shall not attempt now definitely to decide the question,
inasmuch as counsel for defendants in error failed to make any
argument thereon, or present any further authorities. We
simply leave the matter open for further consideration, if oc-
casion shall require. As to all other matters in the opinion,
we see nothing that demands any correction. We are satisfied
with the conclusion reached upon the facts and law, except as
above indicated, and think that if upon the new trial the re-
turns on the writs of attachment are such as to vest jurisdic-
tion, and no new facts appear, the judgment should be for the
plaintiffs." (29 Kas. 515.)

In view of the careful consideration that the facts and the
law of this case have already received at the hands of this
court, and also in view of the carefully prepared opinion of
the learned judge of the trial court, we deem it unnecessary to
discuss at any great length the volume of testimony taken.

Counsel contend with great force and some plausibility that
upon the new trial new facts were developed, and therefore
that the facts are changed so as to call for new and different
conclusions of law.

We have carefully read the one thousand pages of written record, and find that with the exception of the amended returns, and some minor but unimportant testimony connected with the alleged bankrupt title, the case is the same now as when first presented. The trial judge in his written opinion said:

"The facts and questions of law presented and insisted upon by the parties are numerous, but the issues of fact here presented are not different from the facts as presented in the case when it was before the supreme court, and there is but one question which we now propose to examine here, and we shall regard all other questions of law as settled in this case by the supreme court. A full statement of the questions which we regard settled will be found in the report of the case in 28 Kas. *supra*. And as the facts are the same now, and the law has been applied to them, these questions are settled as the law of this case.

"The question unsettled in this case arises on the returns of the sheriff indorsed on the two orders of attachment, and through which the plaintiff claims title to the premises in question. Since this action was tried in the district court of Wyandotte county and heard in the supreme court, the sheriff has amended his returns to these orders of attachment by affixing his signature to the same."

The plaintiffs below, defendants in error, claim title, as upon the former hearing, under judicial sales had upon attachment proceedings against Joseph E. Snyder. The defendants below, plaintiffs in error, claim title, as upon the former hearing, under a deed from the bankrupt court in which Joseph E. Snyder had filed his voluntary petition in bankruptcy. The deed from the assignee in bankruptcy was dated October 20, 1871, and recorded October 27 of that year. The attachment proceedings against Snyder were commenced May 16, 1874. The deed of Joseph E. Snyder for the land in dispute was not executed until April, 1869, more than a year after he filed his voluntary petition in bankruptcy. The law of the case as to the bankrupt title is clearly stated in the report of this case, in 28 Kas. 825, and we are inclined to follow the law as there applied.

1. Case, followed.

It is urged that the opinion heretofore delivered in relation to the bankruptcy proceedings and the title thereunder, was extra-judicial.  When the case was here in 1882, the only defect apparent in the title of plaintiffs was the omission of the signature of the officer on the returns of the orders of attachment.  We held that the returns might be amended, but reversed the case.  In order to direct the court below as to the law of the case, if the returns were amended as suggested, it became the duty of this court to discuss and apply the law upon the facts then presented concerning the bankruptcy proceedings and the title claimed thereby.

As the bankrupt title was prior in time to the title claimed under the attachment proceedings, it was necessary for this court to examine that title, because if that title were valid, then there was no necessity of entering upon any consideration of the title under the attachment proceedings, so the bankruptcy proceedings were in the record and the discussion of the title derived thereby was not wholly *dictum* or extra-judicial.

Again, it is urged that this court should follow the decision of Mr. Justice Miller in the suit of *McAlpine v. Tourtellott*, decided in the United States circuit court on June 8, 1885. (1 Kas. L. J. 330.)  The opinion was delivered upon the dismissal of a bill in chancery to quiet the title to this and other land.  The opinion is somewhat conflicting with the views expressed concerning the bankrupt title in 28 Kas., but the bill in that case did not disclose all the facts testified to and found by the trial court in this case, and we believe when this case is fully examined and considered by the United States supreme court, the views expressed in 28 Kas. will not be dissented from by the able and distinguished justice who decided the case in the United States circuit court. This court, however, is not bound to follow the opinion of a judge of the United States circuit court, even if that judge be a member of the supreme court of the United States.  The United States circuit court is a court of inferior, not of superior jurisdiction to this court.  Upon the findings of the

trial court concerning the bankrupt title, notwithstanding the opinion of Mr. Justice Miller, we perceive no good reason to change or modify the views previously expressed by this court of that title. Among others, the following are the conclusions of the trial court that relate more specifically to the title under the bankrupt proceedings:

"3. That on December 2, 1867, when the said Snyder filed his petition in bankruptcy in the district court of the United States for the district of Missouri, the said Snyder was not the owner of the legal or equitable title, or any estate in the premises described in the plaintiffs' petition.

"4. That on April 13, 1869, after the said Snyder had been adjudged a bankrupt in the court of competent jurisdiction aforesaid, Snyder acquired the legal and equitable title to the premises described in the plaintiffs' petition from the said David E. James, by virtue of the deed of conveyance described in conclusion of fact No. 8, and that the said premises were no part of the estate of the said Snyder at the time he was adjudged a bankrupt, and that therefore the district court of the United States for the district of Missouri, sitting as a court of bankruptcy, had no jurisdiction to sell or dispose of the said premises to Byron Judd, and the sale of said premises described in the deed of conveyance, made by the assignee in bankruptcy to Judd, conveyed no title, legal or equitable, to said Judd or to those holding under him."

It is claimed by counsel for defendants below, that as they claim under a sale in bankrupt proceedings, and as they purchased, as they allege, bankrupt assets, that the decision of this court upon that title can be reviewed by the supreme court of the United States. In order to facilitate this result, we make the express ruling that upon the facts contained in the record and the findings of the trial court, the defendants below have no valid claim or title, legal, equitable or otherwise, from the assignee in bankruptcy of Joseph E. Snyder. If a federal question is involved it will be ultimately decided by the supreme court of the United States, and if we have committed any error it can easily be corrected. This brings us to a consideration of the attachment proceedings. We may premise before discussing these, that we are not called upon

and cannot reverse or modify the attachment proceedings in the cases of *Seegar v. Snyder*, and *Welland v. Snyder*. These cases have never been brought to this court for review or reversal. The district court of Wyandotte county permitted the returns on the orders of attachment to be amended, and the signature of the officer has been affixed thereto. We must therefore take these returns for what they are worth. They stand before this court exactly in the same condition as if the officer had signed the returns on the orders of attachment when he first filed them with the district clerk. The reasons that the district court of Wyandotte county gave for not allowing further amendments are wholly unimportant at this time, and the attachment actions stand or fall upon the record and the returns as amended. We may also, in this connection, remark that the attachment actions are not attacked directly, but only collaterally, and collateral attacks upon judicial proceedings are not favored. Irregularities alone are not sufficient to destroy the validity of judicial proceedings, nor are mere omissions from the record. (*Head v. Daniels*, 38 Kas. 1.)

In the case of *Seegar v. Snyder*, one of the cases upon which the plaintiffs' title rests, the return of the officer, after the statement of receipt of the order, is as follows:

"On the 16th day of May, 1874, at my county, I attached as the property of the within-named Joseph E. Snyder, as described in the appraisement hereto attached and made part of this return, by declaring on the premises that I attached said property at the suit of the within-named Henry R. Seegar, and by taking the same into my possession, and now hold the same subject to the order of the court; and with F. W. Drought and S. Bolmer, two householders of my county, who were by me on the same day first duly sworn to make a true inventory and appraisement of all the property so attached, I made a true inventory and appraisement of all the property so attached; and which said inventory and appraisement is signed by the said householders and by myself, and is returned with this order; and on the same day I left a true copy of this order."

The return in the case of *Welland v. Snyder* is precisely the same as the foregoing, except as to the name of the plain-

tiff, and that the attachment was subject to the attachment in the case of *Seegar v. Snyder*.

In *Head v. Daniels*, supra, it was said by Mr. Justice VALENTINE, speaking for the court:

"In conclusion, we would say that collateral attacks upon judicial proceedings are never favored; and when such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its

**2. Judicial proceedings; collateral attacks; presumption.** jurisdiction, the proceedings will not be held to be void, but will be held to be valid. Irregularities alone are not sufficient to destroy the validity of judicial proceedings; nor are mere omissions from the record. On the contrary, it will generally be presumed, in the absence of anything to the contrary, that all that was necessary to be done with respect to any particular matter, by either the court or its officers, was not only done, but rightly done."

In that case, the officer did not state in his return on the order of attachment that there was no occupant of the premises, and it was claimed under §§ 198–205 of the civil code, that thereby the proceedings were void.

Upon the presumption that an officer does his duty, and in the absence of anything to the contrary, that he did his duty in serving the order of attachment in that case, it was held, that although the officer in his return omitted to state that there was no occupant upon the premises attached, the proceedings were valid.

In *Dunlap v. McFarland*, 25 Kas. 488, it was said, among other things, that —

"It is also claimed that the sheriff did not leave with the occupant of the premises, or, if there was no occupant, then in some conspicuous place on the premises, a copy of the order of attachment. Now it is not shown that the sheriff failed in this particular; nor does it appear that the matter was called to the attention of the court below. The motion to set aside the service did not specifically point out this objection. Under such circumstances, it will be presumed that the sheriff did his duty. But even if he did not, still no harm was done, nor any loss suffered on account thereof, for the defendant seems to have known that his property was attached, and must have

known from the return of the sheriff precisely what property was attached."

Notwithstanding the case of *Sharp v. Baird*, 43 Cal. 577, referred to in the 28th Kas. and also in the 29th Kas., the later decisions of the supreme court of California tend strongly to uphold the validity of the attachment proceedings.

In *Porter v. Pico*, 55 Cal. 165, it was held that—

"A return upon an attachment [or other mesne process] that the officer duly levied the same, is defective in not stating the acts done by the officer in making the service; but such a return is *prima facie* sufficient to show a due execution, though the presumption may be controverted."

In *Anderson v. Goff*, 72 Cal. 65, it was decided:

"The regularity of the levy of an attachment is sufficiently shown, as against a collateral attack, by the return of the attaching officer reciting that he had duly levied the same upon all the right, title and interest of the defendant in and to certain described real estate."

And in *Davis v. Baker*, 72 Cal. 494, the syllabus reads as follows:

"Under section 542 of the code of civil procedure, the levy of a writ of attachment upon real property may be made by posting the attachment papers in a conspicuous place on the land, if the sheriff, at the time of visiting the land for the purpose of making the levy, cannot find any one visibly occupying the property.

"The return of the sheriff to the writ of attachment in question recited that the sheriff, on a specified day, duly levied the same upon the land thereinafter described, 'by posting a copy of the writ, attached to a notice, notifying the defendant that said property was attached, on the premises.' On the trial, the sheriff testified that the papers were posted on a building which was on the land. *Held*, That the return was *prima facie* sufficient to support the levy, although it did not state that the papers were posted in a conspicuous place on the land."

The facts in that case were substantially as follows: The California statute requires the sheriff in attachments to leave a copy of the writ, description of the land attached, and notice, with an occupant of the property, if there be one; if not, then

by posting in a conspicuous place on the property attached. One-half of a town lot 33 feet front by 132 feet deep was attached.   One Ashbrook had at the time of the levy an office on the lot in a small building 12 by 15 feet.  The sheriff testified that when he went to the property there was a table and a chair or two, and a light burning in the office, but he found no one in the house; that he waited awhile, but no one came in, and then he posted the papers on the house.   The trial court on the collateral attack held the levy bad, and that no title passed under the attachment.

The upper court reversed the decision, and in the opinion said :

"The officer is required to execute the writ without delay. Promptness is generally essential to the beneficial use of the writ at all.   The sheriff would be held responsible for any lack of diligence by which loss would accrue.   It is not always easy to find out who is in possession of property.   In view of the promptness required it must have been intended that the occupant should be easily discoverable, in fact, some one visibly occupying the property, so that when the officer visits the property for the purpose of completing the levy he can determine then by what he can see whether he shall serve the copies by leaving with an occupant, or by posting. . . . If the word 'occupant' means simply one in the actual possession of land, there would be a large amount of such property not declared to be exempt, and yet which could not be levied upon.   One may be in the actual possession, and yet not be in the county or state, and there might be no other occupant. In such case there could be no levy if the position of respondent be correct.   One fearing an attachment would have but to lock up his place and go out of the county to be beyond the reach of the writ so far as his real estate is concerned, of which there was no other occupant. . . .   The provision as to an occupant is a direction to the officer as to posting when he goes upon the land to complete his levy: if he find an occupant, he must leave the copies of the papers with such occupant; but if he can find no such occupant, he must post them in a conspicuous place upon the land."

Without referring to other authorities, it seems to us sufficient to say, that as the orders of attachment were properly issued,

and as the returns on the orders of attachment show that the officer attached the property, that he in fact took possession of the same and left a true copy of the orders of attachment, no fatal defects appear in the attachment proceed-

3. Attachment; service of order; presumption.

ings. We must presume, in the absence of anything to the contrary, that all that was necessary to be done with respect to the service of the orders of attachment by the officer, was not only done, but rightly done. (*Head v. Daniels*, supra.)

Within the case of *Davis v. Baker*, supra, if there was no one visibly occupying the property attached at the time of the service of the orders, copies of the orders might have been left in a conspicuous place thereon. (4 Kas. L. J., *supra*.)

The judgment of the district court will be affirmed.

All the Justices concurring.